**Derrick MONROE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A05–0805–CR–271.

Court of Appeals of Indiana.

Jan. 12, 2009.

Alan K. Wilson, Muncie, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant Derrick Monroe was convicted of Class D felony Operating a Vehicle After Being Adjudged an Habitual Traffic Offender, sentenced to a suspended sentence of two years in the Indiana Department of Correction ("DOC"), and placed on home detention, after which his home detention placement was revoked and he was placed in the custody of the DOC. Upon appeal, Monroe challenges the admissibility and sufficiency of the evidence to support the revocation of his placement on home detention. We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 24, 2008, Monroe pled guilty to Class D felony operating a vehicle after being adjudged an habitual traffic offender. That day, the trial court sentenced Monroe to two years in the DOC, suspended this sentence, and ordered that he be placed with Delaware County Community Corrections Home Detention. Monroe agreed to abide by the home detention rules, including Rule No. 17, which prohibited him from possessing firearms at his residence or on his person.

Monroe's home address, where he lived with a certain Adam Pay, who was also known as Adam Kreitzman, was 706 West Powers in Muncie. On February 14, 2008, Officers Clevenger and Callahan [1] found a forty-caliber handgun in the bottom of the refrigerator at that address. Monroe's girlfriend, Tracy Miller, knew of "talks" that there was a gun inside the house. Tr. p. 26. According to Miller, a friend of hers had heard Monroe cock the gun.

On February 21, 2008, the State filed a petition to revoke Monroe's placement in home detention due to his possession of a handgun, which was in violation of his home detention rules. According to Delaware County Community Corrections Supervisor Jennifer Davis, on February 22, 2008, Monroe was arrested and charged in Cause Number 18C02–0802–FC–5 with, *inter alia,* Class C felony Carrying a Handgun Without a License.

1. It is unclear from the record whether Officers Clevenger and Callahan are employed with the Muncie Police Department or Delaware County Community Corrections.

Following an April 24, 2008 revocation hearing, the trial court found Monroe in violation of the terms of his home detention. Accordingly, the trial court changed Monroe's placement to the DOC for the remainder of his sentence. This appeal follows.

## DISCUSSION AND DECISION

Monroe challenges the sufficiency of the evidence to support the revocation of his placement in home detention by challenging the admissibility of the hearsay evidence admitted at the revocation hearing and by claiming that the evidence did not establish that he had possessed the handgun.

 For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). The similarities between the two dictate this approach. *Id.* Both probation and community corrections programs serve as alternatives to commitment to the DOC and both are made at the sole discretion of the trial court. *Id.* A defendant is not entitled to serve a sentence in either probation or a community corrections program. *Id.* Rather, placement in either is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Id.* (quoting *Million v. State*, 646 N.E.2d 998, 1002 (Ind.Ct.App.1995) (internal quotation omitted)).

 While a community corrections placement revocation hearing has certain due process requirements, it is not to be equated with an adversarial criminal proceeding. *Id.* at 549–50. Rather, it is a narrow inquiry, and its procedures are to be more flexible. *Id.* This is necessary to permit the court to exercise its inherent power to enforce obedience to its lawful orders. *Id.* Accordingly, the Indiana Rules of Evidence in general and the rules against hearsay in particular do not apply in community corrections placement revocation hearings. *See id.* at 550–51; *see also* Ind. Evidence Rule 101(c) (providing that the rules do not apply in proceedings relating to sentencing, probation, or parole). In probation and community corrections placement revocation hearings, therefore, judges may consider any relevant evidence bearing some substantial indicia of reliability. *Cox*, 706 N.E.2d at 551. This includes reliable hearsay. *Id.* The absence of strict evidentiary rules places particular importance on the fact-finding role of judges in assessing the weight, sufficiency and reliability of proffered evidence. *Id.* This assessment, then, carries with it a special level of judicial responsibility and is subject to appellate review. *Id.* Nevertheless, it is not subject to the Rules of Evidence nor to the common law rules of evidence in effect prior to the Rules of Evidence. *Id.*

Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. *Id.* A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence. *Id.* We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. *Id.*

### I. Reliability of Hearsay Evidence

 The evidence regarding the discovery of the gun at Monroe's residence by Officers Clevenger and Callahan was ad-

mitted through testimony by Davis, to whom they had reported the discovery. Monroe claims that the trial court erred in admitting this testimony. Monroe challenges this evidence on the basis that it did not contain indicia of reliability. Contrary to Monroe's claim, Davis testified that she personally knew Officers Clevenger and Callahan, that Officer Callahan had worked with Community Corrections for ten years and Officer Clevenger for two and one-half years, and that in the past she had found their information to be reliable. Given this record, and with due deference to the trial court's credibility assessments, we are unable to say that Davis's hearsay testimony lacked indicia of reliability and that the trial court erred in admitting or considering it.

Monroe also challenges the admissibility of Davis's testimony regarding the officers' reported discovery on the grounds that it violated his right to confrontation under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Indiana Supreme Court has specifically held that Crawford does not apply to probation revocation hearings because they are not criminal trials. *Reyes v. State*, 868 N.E.2d 438, 440 n. 1 (Ind.2007). As the Supreme Court has observed, proceedings involving community corrections placement revocations, like probation revocation proceedings, similarly are not criminal trials. *See Cox*, 706 N.E.2d at 550. Accordingly, *Crawford* is not implicated in this case. *See Cox*, 706 N.E.2d at 550; *Reyes*, 868 N.E.2d at 440 n. 1.

## II. Sufficiency of the Evidence

Monroe also challenges the revocation of his home detention placement by arguing that there was insufficient evidence to establish that he was in possession of the handgun, which was found in the refrigerator of the residence where he lived with another person. Even if a defendant is not in actual possession of contraband, a defendant is in constructive possession of contraband if the State shows that the defendant has both (1) the intent to maintain dominion and control over the contraband; and (2) the capability to maintain dominion and control over the contraband. *See Gee v. State*, 810 N.E.2d 338, 340 (Ind.2004).

Upon analyzing these factors in reverse order, we observe that, with respect to the "capability" prong, the proof of a possessory interest in the premises on which contraband is found is adequate to show the capability to maintain dominion and control over that contraband. *See id.* The law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises. *Id.* at 340–41. This is so whether possession of the premises is exclusive or not. *Id.* at 341. Here, Monroe listed the address where the handgun was found as his residence for purposes of home detention, and he does not dispute that he lived at that address. Pursuant to *Gee*, it is immaterial that another person also lived at this residence. *See id.* Accordingly, there was sufficient evidence that Monroe had the capability to maintain dominion and control over the handgun.

With respect to the "intent" prong, when a defendant's possession of the premises upon which contraband is found is not exclusive, the inference of intent to maintain dominion and control over the contraband "must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the [contraband] and [its] presence." *Id.* at 341 (quotation omitted). Such "additional circumstances" may include the place where the contraband is found. *Id.* at 344. In evaluating this factor in the specific context of contraband found inside a re-

frigerator, a panel of this court has reasoned that "[h]uman experience tells us that adult members of a household are in and out [of] a kitchen refrigerator as a matter of course[,]" making it factually unlikely that contraband found inside the kitchen refrigerator would go unnoticed. *Carnes v. State*, 480 N.E.2d 581, 587 (Ind. Ct.App.1985), *trans. denied.* The Supreme Court endorsed this reasoning in *Gee.* 810 N.E.2d at 344. In addition, of course, was the unchallenged testimony that Monroe had been heard cocking the gun and that Monroe's girlfriend was aware of a gun in the house. Accordingly, there was sufficient evidence of additional circumstances to support an inference that Monroe had the intent to maintain dominion and control over the handgun. Both prongs of constructive possession are therefore satisfied, so we reject Monroe's claim that there was insufficient evidence to demonstrate that he possessed the handgun.

Having concluded that the trial court did not err in considering certain hearsay testimony and that there was sufficient evidence demonstrating Monroe's constructive possession of a handgun, we affirm the trial court's judgment revoking Monroe's placement in home detention and changing his placement to the DOC.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and MAY, J., concur.