**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**STEVEN KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

FILED

Nov 02 2012, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CURTIS M. HOWARD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1205-CR-410 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Gregory J. Donat, Judge
Cause No. 79D04-1107-FD-166

**November 2, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Curtis Howard appeals the trial court's order revoking his community corrections placement and requiring that he serve the remaining executed portion of his sentence in the Tippecanoe County Jail ("TCJ") or the Department of Correction ("DOC"). The sole issue presented by Howard for our review is whether the trial court abused its discretion. Finding no abuse of discretion, we affirm.

## Facts and Procedural History

On July 20, 2011, the State charged Howard with class D felony possession of heroin, class D felony possession of a syringe, class D felony possession of hydrocodone, and class A misdemeanor possession of paraphernalia. The State also alleged that Howard was a habitual substance offender.

Pursuant to a plea agreement, on November 4, 2011, Howard pled guilty to class D felony possession of heroin and to being a habitual substance offender. The trial court sentenced Howard to two years on the class D felony, enhanced by five years due to his habitual offender status. The court suspended half of the sentence to probation and ordered that Howard serve the other half of his sentence in Tippecanoe County Community Corrections ("TCCC") as provided by the plea agreement. Both the plea agreement and the sentencing order further provided that, if at any point, Howard is rejected by TCCC or violates the rules of TCCC, Howard shall serve the balance of his executed sentence in the TCJ or in the DOC. Appellant's App. at 27, 30.

On November 12, 2011, while Howard was confined in the TCJ awaiting transfer to TCCC, jail officials noticed damage to ceiling drywall above a toilet in the "dayroom." *Id*. at 33. A security camera recording revealed that Howard had been in the area "messing" with the ceiling. *Id*. After a decision was made to place Howard in a segregation unit due to this behavior, a deputy went to Howard's cell to remove him. When he arrived in Howard's cell, the deputy noticed writing and other markings on the walls of the cell. These markings included "Suck a D**k TCJ," the numbers "14" and "88," a swastika, and "SS lightning bolts." *Id*. Written above the door inside the cell was "Howard's house of pain." *Id*.

On November 17, 2011, TCCC notified the trial court that it had learned that Howard had been destructive and a behavioral problem while confined in the jail. For those reasons, TCCC rejected Howard's placement. Thereafter, on November 18, 2011, the State filed a "Motion to Commit Defendant to Department of Correction for Service of Remaining Executed Sentence." *Id*. at 31. Following an evidentiary hearing, the trial court revoked Howard's community corrections placement and ordered that Howard serve the remaining portion of his executed sentence incarcerated. This appeal followed.

**Discussion and Decision**

Howard's sole contention on appeal is that the trial court abused its discretion in revoking his community corrections placement because the State presented insufficient evidence to support revocation. We disagree.[1]

Probation and community corrections programs serve as alternatives to commitment to the Department of Correction, and both are made at the sole discretion of the trial court. *McQueen v. State*, 862 N.E.2d 1237, 1242 (Ind. Ct. App. 2007). Placement in either probation or a community corrections program is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Million v. State*, 646 N.E.2d 998, 1002 (Ind. Ct. App. 1995). The standard of review on appeal from the revocation of a community corrections placement is the same as that for revocation of probation. *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). A revocation hearing is civil in nature, and the State need only prove any alleged violations by a preponderance of the evidence. *Id.* We will consider the evidence most favorable to the trial court's decision without reweighing that evidence or

---

[1] We note that, rather than addressing the sufficiency of the evidence presented supporting the trial court's revocation of Howard's community corrections placement, the State asserts that the trial court had no discretion here because the parties' plea agreement contemplated the exact scenario that occurred. Specifically, the State argues that because Howard was rejected by TCCC, the trial court had no choice but to revoke his community corrections placement and order placement in the DOC or the TCJ. We agree with the State that a plea agreement is contractual in nature, binding the defendant, the State, and the trial court. *Kopkey v. State*, 743 N.E.2d 331, 340 (Ind. Ct. App. 2001), *trans. denied*. Indeed, the trial court continues to be bound by the plea agreement during a probation or community corrections revocation proceeding. *Cox v. State*, 850 N.E.2d 485, 491 (Ind. Ct. App. 2006). However, we will not address this argument because the State failed to make it to the trial court. *See Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004) (party may not present argument on appeal unless party raised it before trial court). Instead of issuing a blind approval of TCCC's rejection, the trial court held an evidentiary hearing during which the State presented evidence regarding Howard's behavior which supported TCCC's rejection of and the trial court's revocation of that placement. Accordingly, we frame the issue as did Howard in his appellant's brief and address the sufficiency of the evidence as presented to the trial court.

judging the credibility of the witnesses. *Id.* We will affirm the trial court if there is substantial evidence of probative value supporting revocation. *Id.*

Here, Howard was rejected by TCCC and his placement was revoked by the trial court before he began participating in that program due to his behavior at the TCJ. It is well settled that a trial court is permitted to revoke a defendant's placement in a community corrections program even before he enters the community corrections phase of his sentence. *Million*, 646 N.E.2d at 1002. During the evidentiary hearing, the State presented evidence that, while still confined at the TCJ and awaiting transfer to TCCC, Howard intentionally damaged drywall above a toilet. In fact, Howard admitted that he caused the damage during his testimony. The State also presented evidence that Howard caused further destruction by marking the walls of his jail cell with white supremacist symbols, some offensive language, and other writings. As specifically noted by the trial court, while the damage to the ceiling above the toilet may be a "minor offense," the "cumulative" nature of Howard's further damage to his cell supported TCCC's rejection of placement as well as the trial court's revocation of the placement. Tr. at 15.

Although Howard denied making the markings on the cell wall, including "Howard's house of pain," the trial court found his testimony incredible. *Id.* at 16. Indeed, Howard's entire argument on appeal is essentially a request for this Court to reweigh the evidence and reassess witness credibility, which we may not do. The State presented sufficient evidence to support TCCC's rejection of placement as well as the trial court's order revoking Howard's placement. Therefore, the trial court did not abuse its discretion when it revoked Howard's

community corrections placement and ordered that he serve the balance of his executed sentence incarcerated. The trial court's order is affirmed.

Affirmed.

RILEY, J., and BAILEY, J., concur.