**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ELLEN F. HURLEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

FILED

May 24 2013, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

JEREMY ROBERTS,                          )
                                         )
    Appellant-Defendant,             )
                                         )
        vs.                      )    No. 49A05-1211-CR-563
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.              )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara C. Crawford, Judge
Cause No. 49G21-0911-FD-95116

**May 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Jeremy Roberts appeals the revocation of his community corrections placement, arguing that the State produced insufficient evidence that he violated the terms and conditions of his placement. Concluding that the evidence is sufficient, we affirm.

**Facts and Procedural History**

On March 6, 2012, Roberts pled guilty to class D felony intimidation and was sentenced to 730 days in community corrections placement, specifically home detention. On May 14, 2012, the State filed a notice of community corrections violation based on Roberts's arrest for criminal confinement, domestic battery, and battery. On July 11, 2012, the State dismissed the criminal confinement, domestic battery, and battery charges. On July 13, 2012, the State filed an amended notice of community corrections violation alleging that Roberts had been charged with two counts of class A misdemeanor invasion of privacy.[1] The invasion of privacy charges were based on allegations that Roberts had violated a no-contact order by twice telephoning Randee Bennett from jail. On October 4, 2012, the State dismissed the invasion of privacy charges.

On October 10, 2012, the trial court held a hearing on the community corrections violation. Marion County Deputy Prosecutor Erin Warrner testified for the State. She was

---

[1] The State concedes that it presented no evidence at the community corrections violation hearing to establish by a preponderance of the evidence that Roberts committed criminal confinement, domestic battery, and battery. The State had also alleged that Roberts failed to comply with his financial obligation, but the State concedes that it presented no evidence at the community corrections violation hearing to establish by a preponderance of the evidence that Roberts was in arrears of his financial obligation. Thus, we are here concerned only with the sufficiency of the evidence supporting the allegations that Roberts committed two counts of invasion of privacy.

the prosecutor involved in Roberts's arrest for criminal confinement and battery and the later arrest for two counts of invasion of privacy. Warrner testified that Bennett had come to her office to prepare for the criminal confinement and battery trial. Over Roberts's objection, Warrner testified that Bennett had informed her that Roberts called her from jail when he had been arrested for those charges. Warrner then searched the jail call system and found two telephone calls made by Jeremy Roberts to Bennett, one under his personal jail PIN number and one under a PIN number not assigned to him. Warrner listened multiple times to the recordings of these telephone calls and recognized both Roberts's and Bennett's voices. When she listened to the first telephone call, she heard the caller say that his name was "Jeremy." Tr. at 15. She testified that the second call was longer and that she was confident that it was Roberts's voice. Warrner explained that the criminal confinement and battery case was dismissed because Bennett was afraid to testify and wanted to go forward with the invasion of privacy case. Warrner also explained that the invasion of privacy case was dismissed because she was unable to obtain a certified copy of a CD containing the telephone calls that Roberts made to Bennett and Bennett was not present for the trial.

The trial court found that Roberts had violated the terms of his community corrections placement and sentenced him to serve forty-eight days of the suspended portion of his sentence in the Marion County Jail. Roberts appeals.

**Discussion and Decision**

Roberts asserts that there was insufficient evidence to establish that he violated the terms and conditions of his community corrections placement. "A 'community corrections

3

program' means a program consisting of residential and work release, electronic monitoring, day treatment, or day reporting." Ind. Code § 35-38-2.6-2. If a person violates the terms of the placement, the court may change the terms of the placement, continue the placement, or revoke the placement and commit the person to the department of correction for the remainder of the person's sentence. Ind. Code § 35-38-2.6-5.

For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. The similarities between the two dictate this approach. Both probation and community corrections programs serve as alternatives to commitment to the DOC and both are made at the sole discretion of the trial court. A defendant is not entitled to serve a sentence in either probation or a community corrections program. Rather, placement in either is a matter of grace and a conditional liberty that is a favor, not a right.

While a community corrections placement revocation hearing has certain due process requirements, it is not to be equated with an adversarial criminal proceeding. Rather, it is a narrow inquiry, and its procedures are to be more flexible. This is necessary to permit the court to exercise its inherent power to enforce obedience to its lawful orders. Accordingly, the Indiana Rules of Evidence in general and the rules against hearsay in particular do not apply in community corrections placement revocation hearings. [*See*] Ind. Evidence Rule 101(c) (providing that the rules do not apply in proceedings relating to sentencing, probation, or parole). In probation and community corrections placement revocation hearings, therefore, judges may consider any relevant evidence bearing some substantial indicia of reliability. This includes reliable hearsay. The absence of strict evidentiary rules places particular importance on the fact-finding role of judges in assessing the weight, sufficiency and reliability of proffered evidence. This assessment, then, carries with it a special level of judicial responsibility and is subject to appellate review. Nevertheless, it is not subject to the Rules of Evidence nor to the common law rules of evidence in effect prior to the Rules of Evidence.

Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence. We will consider all the evidence most favorable to supporting the judgment of the trial court without

4

reweighing that evidence or judging the credibility of the witnesses. If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation.

*Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009) (citations and quotations marks omitted).

Specifically, Roberts argues that the evidence was insufficient to establish that he committed invasion of privacy by telephoning Bennett twice in violation of a no-contact order. Roberts asserts that the State offered nothing but the hearsay testimony of Warrner. Roberts does not specifically argue that Warrner's testimony that Bennett told her that Roberts called Bennett was inadmissible. Rather, he appears to argue that the hearsay testimony alone is simply not enough to show that he made the phone calls because "[n]o one from the jail testified that the calls took place, and no phone log was offered in evidence," and the "calls were not played for the court, no transcript of the calls were offered, the substance of the calls was not shared, and the purported recipient of the calls, Ms. Bennett, did not testify." Appellant's Br. at 7. The evidence suggested by Roberts would have been probative. However, the absence of such evidence does not diminish or eliminate the probative value of Warrner's testimony. In addition to testifying that Bennett told her that Roberts called, Warrner testified that she herself searched the jail records, found two phone calls made by Jeremy Roberts, listened to the phone calls, and recognized the voices as Roberts's and Bennett's. Roberts's argument is merely an invitation to reweigh the evidence and judge witness credibility, which we may not do. We conclude that Warrner's testimony

5

was sufficient to establish by a preponderance of the evidence that Roberts violated the terms and conditions of his community corrections placement.

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.