**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**T. MICHAEL CARTER**
Scottsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JOSEPH PREWITT,                          )
                                         )
    Appellant-Defendant,              )
                                         )
        vs.                       )    No. 36A01-1302-CR-85
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.               )

APPEAL FROM THE JACKSON CIRCUIT COURT
The Honorable William E. Vance, Senior Judge
Cause No. 36C01-1202-FC-10

**September 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Joseph Prewitt appeals the revocation of his home detention. Prewitt raises one issue which we revise and restate as whether the evidence is sufficient to support the revocation of his home detention. We affirm.

FACTS AND PROCEDURAL HISTORY

On February 23, 2012, the State charged Prewitt with operating a motor vehicle after forfeiture of license for life as a class C felony. On July 10, 2012, Prewitt and the State filed a plea agreement in which Prewitt agreed to plead guilty as charged. The plea agreement provides that Prewitt "shall be imprisoned for two years in the appropriate correctional facility, to be served on home detention as a direct commitment." Appellant's Appendix at 30. On August 14, 2012, the court accepted the plea agreement and sentenced Prewitt to two years to be served on home detention as a direct commitment.

On September 7, 2012, Prewitt began his home detention. Prewitt signed a Home Detention Conditions and Agreement (the "Agreement") and initialed each of the conditions that same day. The Agreement states in part:

2.      An electronic monitoring device **may** be connected to your telephone in your residence and an electronic transmitter (anklet) **will** be placed on your ankle. . . . You shall not, nor shall you let anyone else, tamper with, remove, or destroy your electronic monitoring equipment.

* * * * *

8.      You are **required** to provide written confirmation of **all** activities that require you to be away from your residence each week. This includes copies of time cards or check stubs for employment. You must have the school attendance personnel verify the hours you were present at school each week.

2

9.    You will be required to contact the Home Detention Officer **EVERY WEEK** to pay your fees, submit activity confirmation papers, and request any changes to your schedule for the following week. Failure to provide proper verification can result in a denial of further activities, including work.

* * * * *

15.   You shall not commit any violations of Federal, State or Local law and must contact your Home Detention Officer immediately if detained or questioned by any Law Enforcement Officer. You must advise Law Enforcement personnel that you are on Home Detention.

Id. at 40-41.

Crystal Combs Waggoner, a field officer for the Jackson-Jennings County Community Corrections and the supervision officer for Prewitt, received a report "showing the days that [Prewitt] scheduled and his activities, going to the store and going to doctors and church service and stuff," but received no verification from Prewitt verifying that he went to those places. Transcript at 8. Waggoner discussed the requirement of providing a receipt if he went to a store or a doctor's signature on his activity sheet if he had a doctor's appointment, and Prewitt said that he would do so. However, Waggoner never received anything.

On October 10, 2012, Waggoner received a page indicating that there was a "body strap tamper" with respect to Prewitt's GPS ankle strap. Id. at 12. Waggoner attempted to contact Prewitt on his cell phone, but he did not return her phone calls. Waggoner discovered that Prewitt's ankle strap was on the side of the road at Burkhart Boulevard in Seymour and that Prewitt was not present. Later that evening, Officer Jeff Walters arrested Prewitt. Prewitt stated that he had fought with someone, and later "had one of his spells" or "little mental breakdowns." Id. at 16. Prewitt had "whiskey on him" and

3

said that he had been drinking, did not know whether he had taken any meth, that he could not remember, and had blackouts. Id.

On October 16, 2012, the Jackson-Jennings County Community Corrections filed a request to revoke home detention and alleged that Prewitt failed to maintain a permanent residence, failed to "provide confirmation of his activities, store receipts, appointments, job hunting etc." violating Paragraph 8 of the Agreement, was arrested on October 10, 2012 for escape violating Paragraph 15, and failed to maintain employment. Appellant's Appendix at 43.

On January 22, 2013, the trial court held a hearing on the request. Waggoner testified to the foregoing facts, and the court admitted the Agreement and a list of Prewitt's scheduled activities for which Waggoner had not received verifications. The court further found for Prewitt with respect to the allegations that he failed to maintain a permanent residence, maintain employment, and to pay fees. The court found that Prewitt "did, in fact, violate the terms of home detention by failing to provide confirmation of activities and by escaping from home detention . . . ." Transcript at 35. With respect to the confirmation of activities, the court stated:

> [T]here are plenty of ways that one can get confirmation of the activities that were listed from what I understand from the testimony. The activities were listed on the defendant's schedule that he filed and the Exhibit. Those were not admitted into evidence but Exhibit Two is a recap I suppose of what he was supposed to be doing from his schedule. I look at it and I think, you know, if you're going to go to a church service, you could bring a church bulletin. You could have somebody initial that was at the church service. Someway that the, that community corrections could confirm that you really were at the church service and that was the big part of the defendant's activities. In fact, it looks like four of his nine activities were church related. Certainly, if he's on home detention and he's going to see an attorney in Columbus, somebody at the attorney's office is going to sign

4

some verification that he was there and particularly when I see that one of the attorneys that he was to go see is an attorney who does defense work in this court on a regular basis. I'm finding for the State on the confirmation of activities. Whether or not there is a deadline as to when that is to be done, these dates span more than a month. That confirmation, if you're on home detention, you've got to know you have to do that.

Id. at 32-34. As to the escape allegation, the court stated:

I'm also finding for the State on the escape issue. I don't know whether, I mean, I have no evidence that the defendant didn't know what was going on. I have no evidence of that at all. One would have to assume he knows that his ankle bracelet is being severed if he has an ankle bracelet on.

Id. at 34. The court ordered that Prewitt be incarcerated for the duration of his sentence.

DISCUSSION

The issue is whether the evidence is sufficient to support the revocation of Prewitt's home detention. A defendant is not entitled to serve a sentence in either probation or a community corrections program. Monroe v. State, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). "Rather, placement in either is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.'" Id. (quoting Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999), reh'g denied). For the purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program such as home detention the same as we do a probation revocation hearing. Id. (citing Cox, 706 N.E.2d at 549). The State needs to prove the alleged violations by a preponderance of the evidence. Id. We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses. Id. If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of home detention, we will

5

affirm its decision to revoke home detention. Id. The violation of a single condition of home detention is sufficient to revoke home detention. See Wilson v. State, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999).

Prewitt argues that there was no evidence that he was charged with the crime of escape. He acknowledges that the rules of evidence do not apply to proceedings involving sentencing and probation, but contends that the only evidence with respect to the escape was a "rather vague hearsay statement from the . . . State's witness that [Prewitt] said he cut the unit, followed with statements that he did not remember," and that this does not amount to some evidence that the hearsay evidence contains substantial trustworthiness.[1] Appellant's Brief at 11. Prewitt also points out that he had experienced prior psychotic episodes. With respect to the failure to provide confirmation of activities, he argues that the State failed to prove that there existed a specific time that he was to

---

[1] The following exchange occurred during the cross-examination of Waggoner:

Q:     Did he say he cut his ankle unit?

A:     Yeah, he said he did.

Q:     Did he?

A:     Yeah.

Q:     I thought you told, uh, the State that he said he didn't remember what happened. That he got into a fight.

A:     That's what he told us later on. He said he don't even remember cutting it 'cause he was . . .

Q:     So he said he didn't remember. Saying he didn't remember cutting that, would you admit is different than saying I cut it?

A:     Well, I guess, if that's how you want to say it.

Transcript at 24-25.

provide a report to the home detention office. The State argues that the trial court properly found by a preponderance of the evidence that Prewitt committed the crime of escape and violated Paragraphs 8 and 9 of the Agreement by not providing written confirmation of his activities.

With respect to the allegation that Prewitt was arrested on October 10, 2012, we observe that Ind. Code § 35-44.1-3-4 provides that "[a] person who knowingly or intentionally violates a home detention order or intentionally removes an electronic monitoring device or GPS tracking device commits escape, a Class D felony."[2] The facts most favorable to the revocation reveal that Waggoner received a page indicating that there was a "body strap tamper" with respect to Prewitt's GPS ankle strap and that Waggoner discovered that Prewitt's ankle strap was on the side of the road at Burkhart Boulevard in Seymour. Transcript at 12. Later that evening, Officer Jeff Walters arrested Prewitt. Prewitt had "whiskey on him," said that he had been drinking, that he did not know whether he had taken any meth, that he could not remember, and had blackouts. Id. at 16.

To the extent that Prewitt challenges the evidence regarding the confirmation of his activities, the Agreement required Prewitt to provide written confirmation of all activities that required him to be away from his residence each week and submit activity confirmation papers every week.[3] Appellant's Appendix at 40-41. Waggoner, Prewitt's

---

[2] The request to revoke home detention states: "Joseph L. Prewitt was arrested on October 10, 2012, new arrest while on home detention. (**Escape** IC 35-44-3-5). Violating number 15 of the [Agreement]." Appellant's Appendix at 43. We note that Ind. Code § 35-44-3-5 was repealed by Pub. L. No. 126-2012, § 53 (eff. July 1, 2012), prior to Prewitt's arrest.

[3] To the extent that Prewitt argues that Waggoner admitted that there was no place on the

supervision officer, received no verification from Prewitt verifying that he went to places listed on his schedule. Waggoner also discussed the requirement of providing a receipt if he went to a store, or a doctor's signature on his activity sheet if he had a doctor's appointment, and that Prewitt said that he would do so, but that Waggoner never received anything.

Based upon the facts most favorable to the revocation, we conclude that the State presented sufficient evidence that Prewitt violated the terms of his home detention. See Kuhfahl v. State, 710 N.E.2d 200, 201 (Ind. Ct. App. 1999) (holding that the evidence was sufficient to revoke defendant's probation, and the defendant's argument was simply to ask this court to reweigh the evidence and the credibility of the witnesses).

For the foregoing reasons, we affirm the trial court's revocation of Prewitt's home detention.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.

---

indicating when he was to provide the confirmation of his activities, we observe that while Waggoner testified that the form detailing Prewitt's schedule did not include such a deadline, Paragraph 9 of the Agreement states: "You will be required to contact the Home Detention Officer **EVERY WEEK** to . . . submit activity confirmation papers . . . ." Appellant's Appendix at 41.