## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 15 2016, 7:02 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David T.A. Mattingly
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Patrick Tremell Lucas, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 15, 2016 <br><br> Court of Appeals Case No. <br> 79A02-1510-CR-1695 <br><br> Appeal from the Tippecanoe <br> Superior Court <br><br> The Honorable Randy J. Williams, <br> Judge <br><br> Trial Court Cause No. <br> 79D01-0404-FA-11 |

**Altice, Judge.**

**Case Summary**

[1] Patrick Tremell Lucas appeals from the trial court's order revoking his probation and requiring him to execute the remainder of his sentence at the Indiana Department of Correction (DOC). On appeal, Lucas argues that there was insufficient evidence to support the trial court's finding that he violated the rules of his placement in Tippecanoe County Community Corrections (Community Corrections).

[2] We affirm.

## Facts & Procedural History

[3] On September 28, 2005, Lucas was sentenced to a thirty-year aggregate sentence for one count of Class B felony robbery and one count of Class B felony escape. The trial court ordered twenty years executed, five years suspended on supervised probation, and five years suspended on unsupervised probation. On February 19, 2013, Lucas finished the executed portion of his sentence and began serving his five-year term of supervised probation.

[4] On September 17, 2014, the State filed a petition to revoke probation alleging that Lucas committed the crime of possession of paraphernalia. Lucas admitted this violation, and the trial court ordered him to serve two years on home detention with the possibility of day reporting if it became available. After a period of home detention, Lucas began day reporting on June 11, 2015. Day reporting requires, in pertinent part, that an individual: (1) submit weekly schedules, (2) report in person to Community Corrections Monday through Friday, and (3) abide by a 7:00 p.m. curfew and remain at home until 6:00 a.m.

[5]     Immediately following his day reporting placement, Lucas failed to submit weekly schedules for the weeks beginning June 16 and June 23, 2015. On June 24, 2015, Lucas arrived at Community Corrections for his daily reporting. He was greeted by Rebecca Maslanka, the day reporting supervisor, who informed Lucas that he would receive a violation report for his failure to comply with the Community Corrections rule of turning in weekly schedules. Lucas's sanction for his violation, according to Maslanka, would be a work crew assignment. Lucas became angry at this news and spoke loud enough that "staff members start[ed] to . . . walk toward the front, [began to] ask what was going on, [and] watch[ed] to make sure that the situation didn't escalate . . . ." *Transcript* at 50.

[6]     Around 9:00 p.m. on June 24, 2015, Officers James Knogge and John McKinnis, drove to Lucas's home to deliver the written violation report and conduct a walk-through of the residence. Lucas, however, was not home. About an hour later, Officer Knogge returned to Lucas's residence with another officer. Lucas claimed he had left to pick his children up from the pool because his fiancé had an emergency and was unable to do so. Officer Knogge stated that he would not take action against Lucas for violating curfew. Officer McKinnis, Officer Knogge's supervisor, later disagreed with Officer McKinnis's decision and wrote Lucas up for violating curfew. As a result of Lucas's violations—failing to submit weekly schedules and abide by curfew—he was sanctioned by Community Corrections with work crew and home detention.

[7]     On July 1, 2015, Lucas went to Community Corrections to enroll in the work crew. While there Lucas became upset and loud, stating that he thought it was

"unfair" and that "everything was bogus [and] that he wasn't supposed to be written up." *Id.* at 56. Lucas continued to state that he could not return to home detention because of his children. *Id.* at 45-6. Allison Miner, Deputy Director for Community Corrections, attempted to calm Lucas by telling him to come back the next day after he had composed himself. Lucas, however, was not cooperative and escalated the situation by demanding to know if he was under arrest. After explaining several times that he was not under arrest, Miner finally told him to leave due to his hostile behavior. Miner let Lucas know that she was going to request a warrant for his arrest based on his refusal to return to home detention. As a result of Lucas's behavior, Community Corrections refused to allow Lucas back into the Community Corrections program.

[8] On July 2, 2015, the State filed a Motion to Commit, alleging that Lucas violated his placement at Community Corrections by refusing to return to home detention, as well as by violating two rules of Community Corrections. At the conclusion of an evidentiary hearing on August 7, 2015, the trial court found Lucas violated his placement at Community Corrections. Following a dispositional hearing on September 21, 2015, the trial court revoked Lucas's Community Corrections placement, and ordered him to serve the two-year sanction previously imposed at the DOC. Lucas now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[9] Lucas argues that the State presented insufficient evidence to support the finding that he violated the rules of his Community Corrections placement. For purposes of appellate review, a hearing on a petition to revoke placement in a community corrections program is treated the same as a hearing on a petition to revoke probation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). The State needs only to prove the alleged violations by a preponderance of the evidence. *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). The reviewing court will consider all of the evidence most favorable to the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that Lucas has violated any terms of Community Corrections, the reviewing court will affirm the decision to revoke. *See id.* "Violation of a single condition of probation is sufficient to revoke probation." *Wilkerson v. State*, 918 N.E.2d 458, 461 (Ind. Ct. App. 2009) (citing *Wilson v. State*, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999)).

[10] Additionally, we note that a defendant is not entitled to serve a sentence on probation or community corrections; but rather, placement therein is a "matter of grace" and a "constitutional liberty that is a favor, not a right." *Cox*, 706 N.E.2d at 549. Once the trial court has exercised its grace, the judge has considerable leeway in deciding the outcome when the terms of placement are violated. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

[11] On appeal, Lucas asserts that there was insufficient evidence presented that he failed to "comply with the criteria for participation in home detention" and "cooperate with the staff presenting the program." *Appellant's Brief* at 9.

[12] The record establishes that Community Corrections is no longer available to Lucas as a direct result of his violations and hostile behavior. Maslanka testified that Lucas violated a Community Corrections requirement by not completing two weekly schedules and, thus, received a work crew sanction. Thereafter, Lucas was not at his residence at 9:00 p.m.—two hours past his curfew—when an officer attempted to deliver a violation report, and Lucas did not call the emergency hotline or receive prior approval to be out past curfew. As a result, when Lucas came into the Community Corrections office to enroll for work crew, Miner testified that Lucas stated he "would not and could not" comply with the placement of home detention for his failure to meet curfew. *Transcript* at 12-3. Lucas was hostile to the point that Miner had to ask him to leave.

[13] This is the evidence most favorable to the judgment of the trial court and we reject the invitation to reweigh the evidence. The trial court did not abuse its discretion by determining that Lucas violated the rules of his Community Corrections placement.[1]

---

[1] Lucas also asserts that the trial court abused its discretion when ordering him to serve the remainder of his sentence in the DOC. Lucas, however, presents no argument in support of this. Accordingly, we find the issue

[14] Judgment affirmed.

Bailey, J. and Bradford, J., concur.

---

waived. *See Wingate v. State*, 900 N.E.2d 468, 475 (Ind. Ct. App. 2009) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.").