## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 24 2018, 6:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bonita M. Richardson, *Appellant-Defendant,* | January 24, 2018 |
| | Court of Appeals Case No. 20A05-1708-CR-1887 |
| v. | Appeal from the Elkhart Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Gretchen S. Lund, Judge |
| | Trial Court Cause Nos. 20D04-1606-F6-701 20D04-1703-F6-331 |

**Baker, Judge.**

[1] Bonita Richardson appeals the trial court's order revoking her placement with Elkhart County Community Corrections (ECCC) and executing the balance of her sentence with the Indiana Department of Correction (DOC). She also appeals the sentence imposed by the trial court on her conviction for Level 6 Felony Failure to Return to Lawful Detention, contending that the trial court failed to consider her mental health as a mitigating factor and that the sentence is inappropriate in light of the nature of the offense and her character. Finding no error and that the sentence is not inappropriate, we affirm.

## Facts

[2] On June 28, 2016, the State charged Richardson with Level 6 felony fraud following her unauthorized use of another person's HSA card. Pursuant to a written plea agreement, on September 28, 2016, Richardson pleaded guilty as charged, and on December 7, 2016, the trial court sentenced Richardson to 910 days, with 730 days executed to ECCC and a recommendation for work release, and the remaining 180 days suspended to probation.

[3] Richardson received a pass to work the evening of January 19, 2017, but failed to return to ECCC the next day. On January 23, 2017, ECCC filed a violation notice with the trial court that requested that Richardson be revoked from community corrections and placed in jail or the DOC. On January 24, 2017, the trial court issued a warrant for Richardson's arrest and on March 6, 2017, the State charged her with Level 6 felony failure to return to lawful detention. On April 5, 2017, the police arrested Richardson.

[4] On June 28, 2017, the trial court held a combined hearing for Richardson's work release violation and her new charge. Without the benefit of a plea agreement, Richardson admitted to violating the terms of her work release and pleaded guilty to Level 6 felony failure to return to lawful detention. At a combined sentencing hearing on August 2, 2017, Richardson testified that she left because she was having flashbacks of a prior suicide attempt and because she was not taking medications that help her regulate her behavior. However, she conceded that she did not inform work release about these problems: "I admit I went about it the wrong way . . . . I should have stayed and maybe talked to a caseworker, and told him I couldn't deal with being there." Tr. p. 19.

[5] For the work release violation, the trial court revoked Richardson's placement with ECCC and executed the balance of her 910-day sentence with the DOC. For the failure to return conviction, the trial court found several aggravating and mitigating factors and concluded that the aggravating factors outweighed the mitigating factors. Because of the considerable balance of her previous sentence, the trial court sentenced Richardson to the advisory term of one year, to be served consecutively to the previous sentence, and ordered the DOC to conduct a mental health assessment to address her needs while in custody. Richardson now appeals.

# Discussion and Decision

## I. Placement with the DOC

First, Richardson argues that the trial court erred when it revoked her placement with ECCC and executed the balance of her first sentence to the DOC. If a defendant violates the terms of her community corrections placement, the community corrections director may, among other things, request that the trial court revoke the placement and commit the defendant to the DOC. Ind. Code § 35-38-2.6-5. Trial courts have broad discretion to place defendants in community corrections programs as alternatives to the DOC. *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). We treat a petition to revoke placement in community corrections the same as a petition to revoke probation, meaning we will not reverse the trial court's decision unless it is clearly against the logic and effects of the facts and circumstances. *McCauley v. State*, 22 N.E.3d 743, 747 (Ind. Ct. App. 2014).

It is undisputed that the trial court had the authority to revoke Richardson's placement: she admittedly violated the terms of her work release and, following her disappearance, ECCC filed a notice of violation with the court requesting that she be revoked and moved to jail or the DOC. Richardson contends that the trial court erred because it chose the most severe option available despite her admission to the violation and her openness in discussing her mental health issues.

[8]     While we commend Richardson's candor, we find that the trial court did not err. Instead of taking advantage of an opportunity at leniency, Richardson ran away from work release and disappeared for two months. Moreover, this is not the first time she has squandered such an opportunity—during her last placement with work release in 2014, she amassed nineteen rule violations, including five major violations, and was discharged unsatisfactorily. Even assuming her mental health played some role in the violation, she did not attempt to inform her caseworker or the trial court about her problems so that they could be addressed. In sum, the trial court was entitled to revoke Richardson's placement with ECCC and, considering her history and behavior while with ECCC, we cannot say the trial court's decision to place her in the DOC was against the logic and effect of the facts and circumstances.

## II.  Mitigating Factor

[9]     Next, Richardson argues that the trial court erred by failing to find her history of mental health issues as a mitigating factor. Sentencing decisions rest within the sound discretion of the trial court and we will reverse only if the decision is clearly against the logic and effect of the facts and circumstances. *Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007). A trial court may err by finding aggravating or mitigating factors that are not supported by the record, by omitting factors that are clearly supported by the record and advanced for consideration, or by finding factors that are improper as a matter of law. *Id.* "An allegation that the trial court failed to identify or find a mitigating factor

requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 493.

[10] During the sentencing hearing, Richardson repeatedly brought up her mental health but the trial court did not expressly address it at the hearing or in its order when considering aggravating and mitigating factors. She argues that because there is evidence of her mental health history, the trial court erred by failing to consider it.

[11] A trial court need not always give mental illness mitigating weight. *Ousley v. State*, 807 N.E.2d 758, 762 (Ind. Ct. App. 2004). Indeed, this court noted that when considering weight to give to the evidence of a defendant's mental illness, a court should consider four factors:

> (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime.

*Id.* Moreover, we added that "in the cases in which our Supreme Court has said that a defendant is entitled to mitigating weight based upon a mental illness, the evidence of the illness was so pervasive throughout the proceedings that the defendant was found to be guilty but mentally ill." *Id.* Therefore, a trial court need not assign mitigating weight to mental illness any time it is implicated; instead, it is a factor that must be found only in certain limited situations. *Id.*

[12] Here, the only evidence that Richardson was suffering from longstanding mental health issues was her own testimony, her trial counsel's arguments that she has done better on home detention, and the presentence investigation report, which stated that Richardson self-reported, among other things, that she had been diagnosed with bipolar disorder and severe depression at age fifteen, that she had numerous previous suicide attempts, and that she took prescribed medications.[1] With respect to the factors above, besides her claims that medication kept her from hearing voices and "do[ing] bad things," tr. p. 19, and that her flashbacks were "traumatic," *id.* at 15, the evidence provides no details regarding her ability to control her behavior, the overall limitations to her functioning, or the extent of any nexus between these problems and her commission of the offense. Considering this limited evidence, the trial court did not err by failing to assign mitigating weight to her mental history.

## III. Appropriateness

[13] Finally, Richardson contends that the length and location of the sentence imposed by the trial court are inappropriate in light of the nature of the offense and her character.[2] Indiana Appellate Rule 7(B) provides that this Court may

---

[1] The record reveals that she was being housed in the DOC's medical unit during her sentencing hearing, participating through video, and her criminal history provides that she was at a mental health facility in Illinois from November 2002 – January 2003, but the record is devoid of details.

[2] As the State correctly observes, "a trial court's action in a post-sentence probation violation proceeding is not a criminal sentence as contemplated by Rule 7(B) and, thus, the rule is inapplicable." *Milliner v. State*, 890 N.E.2d 789, 793 (Ind. Ct. App. 2008). As such, we will not consider the imposition of the remainder of the 910-day term for Richardson's violation of the conditions of her work release; we will consider only the one-year sentence for Richardson's conviction for failure to return to lawful detention.

revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted). Additionally, we may consider the place that the sentence is to be served under our review and revise authority. *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007).

[14] Richardson was convicted of Level 6 felony failure to return to lawful detention, for which she faced a sentence of six months to two and one-half years, with an advisory term of one year. Ind. Code § 35-50-2-7(b). The trial court sentenced her to a fully-executed, one-year term, to be served consecutively with the balance of her 910-day term in the DOC.

[15] With respect to the nature of the offense, Richardson voluntarily left the work release program and, not only did she fail to report the next day, she absconded for more than two months. She argues that because she did not use weapons or violence or otherwise harm anyone that her offense was less egregious than the bare elements of the crime. However, the controlling statute already takes that into consideration. *See* I.C. § 35-44.1-3-4(c) (noting that failure to return is a Level 5 felony if, during its commission, "the person draws or uses a deadly weapon or inflicts bodily injury on another person").

[16]    With respect to Richardson's character, she pleaded guilty without the benefit of a plea agreement and she was open and honest with the trial court concerning her actions—both of which reflect positively on her character. Nevertheless, she has a considerable criminal history dating back to 1998 including numerous convictions for forgery and other offenses in multiple states. Richardson also has a history of failing to comply with the terms of her work release. During her last placement in 2014, she amassed nineteen rule violations, including five major violations, and was also discharged unsatisfactorily.

[17]    Finally, with respect to the location of her sentence, Richardson contends that placement on home detention or a continuation of work release would be more appropriate because either would provide her "more appropriate options" to address her mental health and an opportunity to support her son. Appellant's Br. p. 20. But as the trial court noted, alternative sentences have proved to be ineffective in reforming or deterring Richardson's criminal behavior. Further, Richardson fails to explain why the DOC would be unable to address her mental health, especially considering that the trial court ordered the DOC to conduct a mental health assessment to ensure her mental health concerns are addressed while she is placed there.

[18]    In sum, while we commend Richardson for taking responsibility for her actions, in light of her substantial criminal history and her poor record on work release, we find that the one-year advisory sentence is not inappropriate in light of the nature of the offense and her character.

[19]     The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.