## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 03 2019, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ann M. Sutton
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth Aikman,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 3, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1653<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Lisa F. Borges,<br>Judge<br><br>Trial Court Cause No.<br>49G04-1704-F5-13287 |

**Altice, Judge.**

**Case Summary**

[1] Following a contested hearing, the trial court revoked Kenneth Aikman's placement in community corrections and his probation, and it ordered Aikman to execute his six-year sentence in the Indiana Department of Correction (the DOC). On appeal, Aikman argues that the trial court should not have held a contested hearing and that Aikman should have been given the benefit of his admission to the violation, receiving only five years in the DOC.

[2] We affirm.

### Discussion & Decision

[3] In February 2018, Aikman pled guilty to three counts of Level 5 felony battery resulting in bodily injury to a public safety official. On February 20, 2018, the trial court sentenced Aikman to concurrent sentences of six years with two years suspended to probation. His four-year executed term was to be served in community corrections. Accordingly, Aikman was placed at the Duvall Residential Center (Duvall).

[4] On Saturday, May 5, 2018, William Beck, a community corrections officer, observed Aikman exchange something with another resident at Duvall. Beck came down from the catwalk and recovered a "brown wet substance rolled in paper" from Aikman's pocket. *Transcript* at 38. Believing that the substance was tobacco, Beck simply took it from Aikman. Aikman's behavior was "normal" at the time. *Id*. at 39.

[5] Later that same day, around 3:15 p.m., Duvall's dayshift supervisor Michael McGrath received a notification that "someone might be under the influence." *Id*. at 35. On his way through the center, McGrath encountered Aikman, who was unable to keep his balance and "screaming saying he was on fire." *Id*. Aikman was taken by ambulance to the hospital.

[6] Aikman returned from the hospital at approximately 9:30 that evening and spoke with Duvall's manager Shannon Bowling at the doorstep. Aikman told her that he had "overdosed on some stuff that he got from the Hispanics in A dorm." *Id*. at 31. Aikman then went into the facility and was searched by the nightshift supervisor, who found a brown substance wrapped in white paper in Aikman's pocket. Bowling asked Aikman what the substance was, and he responded, "the stuff that I was smoking earlier that sent me to the hospital." *Id*. Aikman indicated that he forgot it was in his pocket. The substance was believed to be fentanyl.[1]

[7] On May 9, 2018, the State filed a notice of community corrections violation with the trial court. The notice alleged that Aikman had violated Duvall's rules regarding the possession or use of a controlled substance and the possession of dangerous/deadly contraband. Additionally, the State filed a notice of probation violation the following week.

---

[1] Two employees that came in direct contact with the substance were taken to the hospital due to illness, and the facility was evacuated of all residents. The fire department, police, and board of health all responded to the scene. The facility was cleaned with bleach to make sure it was safe for the return of the residents.

[8] On May 18, 2018, the trial court held a hearing regarding the alleged violations. Aikman, who was represented by counsel, indicated that he wanted to admit the violations but with an explanation. His subsequent "admission" ended up being that he picked up an unknown substance from the floor for the sole purpose of turning it over to a guard but then he became ill and forgot that it was in his pocket. Based on Aikman's version of events, the trial court determined, with the agreement of Aikman's counsel, that a contested hearing would need to be held.

[9] On the morning of the contested hearing on June 22, 2018, the trial court inquired as to whether Aikman wanted to admit the violations. The court informed Aikman regarding the preponderance-of-the-evidence standard and warned that if the State brings in all its evidence, "it may be difficult for you to maintain a good argument." *Id*. at 11. The court advised him to talk with his attorney about "anything else that might be available" because otherwise he could get "full backup" time. *Id*. at 11-12. Aikman then gave a long account of his version of events, sticking with his original story but admitting that he knew what he picked up was some type of drug. The trial court responded that Aikman's statement constituted an admission to knowingly possessing the drug. When the trial court indicated that he was facing six years of backup time, Aikman seemed surprised. The court told Aikman to talk with his attorney.

[10]     When the hearing resumed, the parties began to address the appropriate sanction. The court indicated that Aikman could not return to Duvall.[2] As the court went through Aikman's criminal record, his counsel stated that Aikman still wanted a contested hearing. The court swore in the witnesses and began the contested hearing. The State called its first witness, but Aikman interrupted and began asking questions about the possible sanction. A colloquy ensued between Aikman, counsel, and the court regarding the time remaining on the sentence. The court determined that 876 days remained on the executed portion of the sentence and then two years of probation, which could be revoked. Aikman responded that he would like to think about it because "that's a long time…for, you know, trying to help the people keep that stuff out of their facility." *Id*. at 23. Aikman's counsel then verified that the court was amenable to revoking only one of the two years of probation (along with the executed sentence) if Aikman admitted the violations. The court and counsel clarified that this would mean about thirty months of actual time served in the DOC. Aikman asked if he "could have leniency" and the court responded that this was lenient. *Id*. at 28. He then agreed to admit the violations but in the next breath asked if he could think about this for a month. The court responded, "Oh, for the love of Pete, no.… You either want the agreement or you don't want the agreement and I'm going to listen to the evidence and – and I'll make

---

[2] The court noted that Aikman had been improperly placed there in the beginning due to a prior sex offense.

up my own mind then on what to do." *Id*. at 29. Aikman responded, "Yeah", and the court proceeded with a contested hearing. *Id*.

[11] The State presented several witnesses, and Aikman testified in his own defense, maintaining his version of events that conflicted with the State's evidence. Additionally, on cross-examination, Aikman acknowledged that he had been sanctioned twice before at Duvall for possession or use of a controlled substance. At the conclusion of the hearing, the trial court found Aikman in violation, revoked his placement in community corrections and his probation, and ordered execution of the six-year sentence at the DOC.

## Discussion & Decision

[12] On appeal, Aikman argues that he should have received the benefit of his admission, and the contested hearing should not have occurred. In other words, he contends that the trial court should have imposed the five-year sentence agreed by the parties because he admitted to the violations.

[13] It is well established that probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled.[3] *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Once a trial court has exercised its grace by ordering probation rather than incarceration, the trial court has considerable

---

[3] The same is true with respect to placement in a community corrections program. *See Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009) ("Both probation and community corrections programs serve as alternatives to commitment to the DOC and both are made at the sole discretion of the trial court.").

leeway in deciding how to proceed. *Id.* Accordingly, a trial court's sentencing decisions for probation violations are reviewable for an abuse of discretion and reversible only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[14] Aikman's sole argument is that he tried to admit the violations without the need of a contested hearing. The record, however, establishes the illusory nature of Aikman's admission and that he vacillated between wanting and not wanting a contested hearing. We agree with Aikman's assertion on appeal that "it really made no sense for him to proceed to the contested hearing." *Appellant's Brief* at 10. But Aikman had ample opportunity to forgo a contested hearing and accept the five-year offer on the table. Aikman balked one too many times and ended up with a contested hearing at which the State presented damning evidence against him and rebutted his self-serving story. Based on the evidence presented, the trial court ordered Aikman to serve his six-year sentence in prison. The trial court acted within its discretion, and Aikman has only himself to blame for not receiving the lesser term.

[15] Judgment affirmed.

Najam, J. and Pyle, J., concur.