Adonis HOLMES, Appellant/Defendant,

v.

STATE of Indiana, Appellee/Plaintiff.

No. 09A02–0909–CR–883.

Court of Appeals of Indiana.

March 25, 2010.

Matthew D. Barrett, Matthew D. Barrett, P.C., Logansport, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Wade James Hornbacher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Adonis Holmes appeals the trial court's determination that he violated the terms of his home detention. Specifically, Holmes challenges the admissibility and sufficiency of the evidence to support the revocation of his placement on home detention. We affirm.

### FACTS AND PROCEDURAL HISTORY

On March 14, 2007, Holmes was charged with Class C felony possession of cocaine, Class D felony residential entry, and two counts of Class D felony theft. The State subsequently amended the charging information to include a charge that Holmes was a habitual offender. On February 21, 2008, Holmes pled guilty to Class C felony possession of cocaine pursuant to a plea agreement in exchange for the dismissal of the remaining counts and the habitual offender charge. On March 18, 2008, Holmes was sentenced to six years of incarceration with two years suspended to probation.

On May 1, 2009, less than seventy days after being released from the Department of Correction ("DOC"), Holmes was charged with operating a vehicle while in-

toxicated and public intoxication. The Cass County Probation Department filed a notice of probation violation on May 5, 2009, alleging that Holmes violated the terms of his probation by committing the offenses of operating a vehicle while intoxicated and public intoxication. Holmes's probation was revoked after Holmes admitted to violating his probation, and on June 17, 2009, Holmes was ordered to serve the remainder of his sentence, ninety-eight weeks, on home detention.

Less than one month later, on July 13, 2009, Holmes submitted a urine sample as part of the random screening process connected to his home detention. The sample, which was tested by AIT Laboratories, tested positive for alcohol, indicating that at the time the sample was given, Holmes's blood alcohol content ("BAC") was .046%. On July 23, 2009, the State filed a notice alleging that Holmes violated the terms of his home detention by consuming alcohol. The trial court conducted a fact-finding hearing on August 27, 2009, at the conclusion of which the trial court determined that the evidence supported a finding that Holmes had violated the terms of his home detention. The trial court revoked Holmes's placement on home detention and ordered that he serve the remainder of his previously suspended sentence in the DOC. Holmes now appeals.

## DISCUSSION AND DECISION

On appeal, Holmes challenges the admissibility of the urinalysis report admitted during the revocation hearing and by claiming that the evidence was insufficient to establish that he had consumed alcohol in violation of the conditions of his home detention. Holmes also challenges the sufficiency of the evidence to support the revocation of his placement on home detention.

For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind.1999). The similarities between the two dictate this approach. *Id.* Both probation and community corrections programs serve as alternatives to commitment to the DOC and both are made at the sole discretion of the trial court. *Id.* A defendant is not entitled to serve a sentence in either probation or a community corrections program. *Id.* Rather, placement in either is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Id.* (quoting *Million v. State*, 646 N.E.2d 998, 1002 (Ind.Ct.App.1995) (internal quotation omitted)).

While a community corrections placement revocation hearing has certain due process requirements, it is not to be equated with an adversarial criminal proceeding. *Id.* at 549–50. Rather, it is a narrow inquiry, and its procedures are to be more flexible. *Id.* This is necessary to permit the court to exercise its inherent power to enforce obedience to its lawful orders. *Id.* Accordingly, the Indiana Rules of Evidence in general and the rules against hearsay in particular do not apply in community corrections placement revocation hearings. *See id.* at 550–51; *see also* Ind. Evidence Rule 101(c) (providing that the rules do not apply in proceedings relating to sentencing, probation, or parole). In probation and community corrections placement revocation hearings, therefore, judges may consider any relevant evidence bearing some substantial indicia of reliability. *Cox*, 706 N.E.2d at 551. This includes reliable hearsay. *Id.* The absence of strict evidentiary rules places particular importance on the fact-finding role of judges in assessing the weight,

sufficiency and reliability of proffered evidence. *Id.* This assessment, then, carries with it a special level of judicial responsibility and is subject to appellate review. *Id.* Nevertheless, it is not subject to the Rules of Evidence nor to the common law rules of evidence in effect prior to the Rules of Evidence. *Id.*

Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. *Id.* A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence. *Id.* We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. *Id.*

*Monroe v. State,* 899 N.E.2d 688, 691 (Ind. Ct.App.2009).

### I. Admission of Urinalysis Report

■ On appeal, Holmes contends that the trial court abused its discretion in admitting the urinalysis report into evidence during the home detention revocation hearing. Specifically, Holmes argues that the urinalysis report is unreliable hearsay because neither the toxicologist nor the certifying scientist testified during the home detention revocation hearing. Generally, the admission of evidence is within the trial court's discretion, and its decisions are only reviewed for an abuse of that discretion. *State v. Seabrooks,* 803 N.E.2d 1190, 1193 (Ind.Ct.App.2004). An abuse of discretion occurs if a decision is clearly against the logic and effects of the facts and circumstances before the court or if the court has misinterpreted the law.

*Id.* However, if the trial court abuses its discretion in admitting evidence, the defendant is not entitled to a new trial unless he demonstrates that the improperly admitted evidence contributed to the trial court's determination. *Id.*

■ Again, the due process right applicable in a hearing relating to the revocation of probation or a community corrections placement allows for procedures that are more flexible than in a criminal prosecution. *Reyes v. State,* 868 N.E.2d 438, 440 (Ind.2007). Such flexibility allows courts to enforce lawful orders, address an offender's personal circumstances, and protect public safety, sometimes within limited time periods. *Id.* Within this framework, and to promote the aforementioned goals of a hearing relating to the revocation of probation or a community corrections placement, courts may admit evidence during the hearing that would not be permitted in a full-blown criminal trial. *Id.* However, this does not mean that hearsay evidence may be admitted "willy-nilly" in a hearing relating to the revocation of probation or a community corrections placement. *Id.*

In *Reyes,* the Indiana Supreme Court adopted the substantial trustworthiness test as the means for determining whether hearsay evidence should be admitted during a hearing relating to the revocation of an individual's probation or community corrections placement. *Id.* at 441. The substantial trustworthiness test requires that the trial court evaluate the reliability of the hearsay evidence. *Id.* at 442. In support of its holding adopting the substantial trustworthiness test, the Supreme Court noted that the need for flexibility combined with the potentially onerous consequences of mandating a balancing inquiry for every piece of hearsay evidence in every probation revocation hearing in

Indiana weighs strongly in favor of the substantial trustworthiness test. *Id.* at 441.

In *Reyes,* the State filed a notice of probation violation alleging that the Defendant violated his probation by testing positive for cocaine. *Id.* at 439. During a hearing on the matter, the State sought to submit into evidence the affidavit of the scientific director of the laboratory that conducted the test on urine samples provided by the defendant, the results of the urinalysis tests on the samples provided by the defendant, and other related documents. *Id.* The scientific director did not testify at the hearing. *Id.* Defendant's counsel objected to the admission of the affidavits as hearsay and claimed that the admission of the affidavit without live testimony from the affiant would violate the defendant's right to confrontation. *Id.* The trial court admitted the affidavits and revoked the defendant's probation. *Id.* The Indiana Supreme Court affirmed the revocation of the defendant's probation. *Id.* at 443.

The Indiana Supreme Court's holding in *Reyes* is instructive here because we are faced with a similar factual scenario. In *Reyes,* the scientific director of the laboratory that conducted the urinalysis test affirmed under the penalties of perjury that he was familiar with the procedures employed to ensure the chain of custody of samples, the testing of those samples, and the validity of the test procedures employed by the lab. *Id.* at 442. Based on the results of the tests on the defendant's urine sample, the scientific director concluded that the defendant had used cocaine within seventy-two hours of providing the sample. *Id.* The Indiana Supreme Court concluded that the evidence adequately supported a finding that the scientific director's affidavit was trustworthy. *Id.*

■ With respect to the urinalysis report at issue here, AIT Laboratories toxicologist Scott Kriger similarly affirmed under the penalties of perjury that Holmes's urine sample "was received under sealed and controlled conditions and was properly Identified, Accessioned, and Tested in accordance to the Standard Operating Procedures of AIT Laboratories." State's Ex. 1. In addition, the certifying scientist, Erika Sprochi, affirmed that Holmes's urine sample was "handled and analyzed in accordance with all applicable requirements." State's Ex. 1. The urinalysis report provided by AIT Laboratories indicated that at the time Holmes provided the urine sample, Holmes's BAC was .046%. Although the trial court did not make detailed statements relating to reliability in admitting the urinalysis report, the trial court determined that the urinalysis report was reliable enough to pass the substantial trustworthiness test outlined in *Reyes.* In light of the Indiana Supreme Court's holding in *Reyes* and the trial court's finding of reliability, we conclude that the urinalysis report prepared by AIT Laboratories is substantially trustworthy. Thus, we further conclude that the trial court did not abuse its discretion in admitting the urinalysis report during the hearing concerning the revocation of Holmes's home detention.

Moreover, our conclusion that the trial court did not abuse its discretion in admitting the results of the urinalysis report are further bolstered by this court's previous opinion in *C.S. v. State,* 817 N.E.2d 1279 (Ind.Ct.App.2004).[1] In *C.S.,* the appellant challenged the propriety of permitting the probation officer's limited knowledge to establish the results of the drug screen. 817 N.E.2d at 1281. The trial court deter-

---

1. In *C.S.,* the juvenile court's adjudication that the juvenile was delinquent was reversed on other grounds not relevant to the instant appeal. *See C.S.,* 817 N.E.2d at 1281–82.

mined that the testimony of the operations manager of the work release center regarding a urine screening test for marijuana and his sponsoring of the exhibit showing the test results was proper. *Id.* Upon appeal, this court concluded that the evidence was properly admitted because "the probation officer testified in detail about how the sample was secured and sealed, how it was transmitted to the laboratory and how [the officer] received the results." *Id.* The officer further testified that she followed a standard process in securing, sealing, and transmitting the sample for testing. *Id.* This court concluded that, in light of the probation officer's testimony, the results of the drug screen provided substantial indicia of reliability. *Id.*

Here, Miami County Community Corrections Field Officer Chet Sites testified in detail about how the urine sample was secured and sealed, how it was transmitted to AIT Laboratories, and how the Miami County Community Corrections office received the test results. Sites testified that he followed the standard process employed by the Miami County Community Corrections office in securing and testing such samples. We conclude that Sites's testimony, in conjunction with his testimony that the test result indicated that Holmes had consumed alcohol in violation of the terms of his home detention, provided "substantial indicia of reliability" and that the urinalysis test results were properly admitted. *See generally, C.S.,* 817 N.E.2d at 1281.

■ Further, to the extent that Holmes challenges the admissibility of the urinalysis report on the grounds that it violated his right to confrontation under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Indiana Supreme Court has specifically held that *Crawford* does not apply to probation revocation hearings because they

are not criminal trials. *Monroe,* 899 N.E.2d at 692 (quoting *Reyes,* 868 N.E.2d at 440 n. 1). "As the [Indiana] Supreme Court has observed, proceedings involving community corrections placement revocations, like probation revocation proceedings, similarly are not criminal trials." *Id.* Accordingly, *Crawford* is not implicated in this case. *See id.*

## II. Sufficiency of the Evidence

■ Holmes also challenges the revocation of his home detention placement by arguing that there was insufficient evidence to support the trial court's determination that he violated the terms of his home detention by drinking alcohol. Again, because a probation hearing is civil in nature, the State needed only to prove the alleged violation by a preponderance of the evidence. *Monroe,* 899 N.E.2d at 691. Upon review, we consider the evidence most favorable to the determination of the trial court, and will affirm the trial court's determination if there is substantial evidence of probative value to support the trial court's determination that Holmes violated any of the terms of his home detention. *Id.*

Having concluded that the urinalysis report was properly admitted during the home detention revocation hearing, we conclude that the State presented sufficient evidence to support the trial court's determination that Holmes violated the terms of his home detention by consuming alcohol. The urinalysis report indicated that at the time Holmes gave the urine sample in question, his BAC was .046%. The trial court found the results of the urinalysis report to be reliable to prove beyond a preponderance of the evidence that Holmes consumed alcohol. We conclude that the urinalysis report provided substantial evidence of probative value in support of the trial court's determination,

and thus, we will not disturb the trial court's determination on appeal.

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J., concur.