**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
Marion County Public Defender Agency
Indianapolis, Indiana

**MICHAEL G. MOORE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHELLEY L. KING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1404-CR-153 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1111-FB-82378

**October 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Shelley L. King appeals the revocation of both his placement in community corrections and his probation, contending that the condition of his community corrections placement that prohibited disrespectful behavior was unreasonably vague and was not a condition of his probation.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In November 2011, the State charged King with Class B felony burglary, Class D felony theft, Class A misdemeanor criminal mischief, and Class A misdemeanor carrying a handgun without a license. Pursuant to the plea agreement accepted by the trial court, King pleaded guilty to the burglary and handgun charges and the remaining counts were dismissed. King was sentenced on June 19, 2012, to a term of eight years for the burglary conviction, with six years executed and two years suspended. The first four years of that sentence were to be served with the Department of Correction ("DOC"), followed by two years with the Marion County Community Corrections Program ("MCCC"). King was also placed on probation for one year. For the handgun conviction, King was sentenced to a concurrent one-year sentence.

Also, at sentencing, the trial court issued an Order of Commitment to Community Corrections and an Order of Probation, both documents required and received King's signature. In relevant part, the Order of Commitment required King to "comply with all rules [and] regulations" of community corrections. *Appellant's App.* at 56. The Order of Probation required King to "strictly comply" with its terms, and it explained, "If the

2

Department finds that you have violated a condition at any time during the probationary period, a petition to modify or revoke your probation may be filed . . . ." *Id*. at 59.

In August 2013, King entered the Duvall Residential Center ("DRC"), which was part of the MCCC work release program. As a prerequisite to becoming a resident, King was required to sign a contract regarding conditions of placement. *Tr*. at 31-32. Condition 10 of that contract read in part, "*You shall* cooperate and *be respectful with* any member of Community Corrections staff, security staff, anyone conducting business for Community Corrections, any visitors to the facility and *fellow inmates*." *State's Ex*. 1 (emphasis added). King placed his signature on the last page under a boldfaced paragraph that read:

> I understand each of the rules above and have indicated my understanding by placing my initials in front of each rule. I agree to follow each of the rules above. *I acknowledge that any failure to abide by the rules above may result in a Notice of Violation being filed with the Court or the [DOC]; whichever is appropriate. If the Court or the [DOC] finds that I am in violation of the rules, my placement within Community Corrections may be revoked and I may be ordered to serve my sentence in the [DOC].* Additionally, a violation of any rule may result in an Administrative Hearing. If I am found in violation at the Administrative Hearing, I may be deprived of all or part of my "good time" credit. Violations may also be reported to the Marion County Prosecutor or other law enforcement and may result in my arrest and criminal prosecution. *If I am on probation, I understand that a violation of the above rules may result in the Court revoking my probation and ordering me to serve all or part of any suspended sentence in the [DOC].*

*Id*. (emphasis added)

On December 22, 2013, King and about six other DRC residents approached Duwan Jackson, another resident. Jackson was sitting on his bunk at the DRC when King and the others tried to take Jackson's money. King also threatened to beat up Jackson. *Tr*. at 36. Jackson feared for his safety and reported the incident to Sergeant Linda Goodner, an

3

employee of Marion County Community Corrections who, at that time, worked at DRC. *Id*. at 15.

Sergeant Goodner watched a surveillance video of the incident, which showed King and others approaching Jackson as he sat on his bunk. Sergeant Goodner testified that the video revealed that the altercation appeared "pretty heated" and the group "kept getting closer" to Jackson. *Id*. at 44. The group moved their hands as if "trying to wave [Jackson] on," but Sergeant Goodner also noticed that the group was blocking Jackson from leaving the dorm. *Id*. According to Sergeant Goodner, King was near the front of the group, was speaking towards Jackson, and appeared "agitated." *Id*. at 44, 46-47.

Based on this incident, the MCCC filed a notice of violation alleging that King had violated the terms and conditions of his placement in community corrections by "threaten[ing] another Duvall resident." *Appellant's App.* at 67. Soon thereafter, the Marion County Probation Department filed a similar notice alleging that King had violated probation by violating the conditions of his community corrections placement. A consolidated hearing was held on March 16, 2014. Following the close of evidence, the trial court found by a preponderance of the evidence that King had violated both his community corrections placement and the terms of his probation. The trial court revoked King's placement with the MCCC and his probation and sentenced him to serve the balance of his sentence with the DOC. King now appeals.

## DISCUSSION AND DECISION

King first contends that the condition of his community corrections placement requiring King to be "respectful" with fellow inmates was unreasonably vague.

4

*Appellant's Br.* at 3. King asserts he has a due process right to have conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison, and that the condition that he be "respectful" did not adequately advise him what conduct would result in a violation. *Id*.

The State recognizes that "a probationer or resident of a community corrections facility must be given adequate notice to the conduct expected of him and the violations that could end his placement with community corrections." *Appellee's Br.* at 6. Likewise, a probationer or a resident in community corrections "has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." *Id*. (citing *Smith v. State*, 779 N.E.2d 111, 118 (Ind. Ct. App. 2002), *trans. denied*). The State argues, however, that such person "should not be permitted to wait for appeal before challenging a term or condition on the grounds of vagueness." *Id*. We agree.

King has waived his vagueness argument. King did not object to the condition at the time it was imposed, nor did he argue during the consolidated evidentiary hearing that the term "respectful" was vague or unclear. During the hearing, King asserted that Jackson's testimony was "wholly incredible," and that King did not violate the terms and conditions of his placement in community corrections because he was not truly part of the group that threatened Jackson and, based on King's physical size, Jackson could not truly have been threatened into giving King any money. *Tr.* at 49-50. Because King failed to raise an argument regarding the vagueness of the term "respectful" at any time prior to this appeal, he has waived appellate review of this argument. *See Robinette v. State,* 641 N.E.2d

5

1286, 1288 (Ind. Ct. App. 1994) (probationer waived argument concerning constitutional validity of probation condition for failing to raise issue at time condition was imposed or at his probation revocation hearing).

King next maintains that the trial court abused its discretion when it revoked King's probation upon finding that he violated the terms of his community corrections contract. Because the revocation of King's probation was based on his having violated the terms of his community corrections placement, we address those issues in turn.

On appeal, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. *Holmes v. State*, 923 N.E.2d 479, 482 (Ind. Ct. App. 2010); *Cox v. State,* 706 N.E.2d 547, 549 (Ind. 1999). Probation and community corrections programs serve as alternatives to commitment to the DOC, and both programs are made at the sole discretion of the trial court. *Holmes*, 923 N.E.2d at 482. A defendant is not entitled to serve a sentence in either probation or a community corrections program; rather placement is a matter of grace and a conditional liberty that is a favor, not a right. *Id.* (internal quotations omitted).

Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. *Id.* at 483. A probation hearing is civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence. *Id.* We consider the evidence most favorable to the judgment of the trial court and do not reweigh that evidence or judge the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a

defendant has violated any terms of probation or community corrections, we affirm its decision to revoke. *Id.*

King was initially sentenced on June 19, 2012. That same date, King executed an Order of Commitment to Community Corrections and an Order of Probation. *Appellant's App.* at 56, 59. In relevant part, the Order of Commitment required King to "comply with all rules [and] regulations" of the MCCC. *Id.* at 56. In August 2013, King entered the DRC, a part of the MCCC work release program. A condition for placement in the DRC, Condition 10, required King to "cooperate and *be respectful with* any member of Community Corrections staff . . . and *fellow inmates.*" *State's Ex*. 1 (emphasis added). Once allegations were made that King violated the conditions of community corrections, the trial court was charged with the duty of determining whether those allegations were true.

Following the consolidated evidentiary hearing addressing the allegations that King violated the conditions of placement in community corrections, the trial court concluded:

> It strikes me that a person who is an inmate at Duval[1] has no option if they feel threatened other than to approach staff. That is exactly what Mr. Jackson did. He testified, and I thought credibly . . . . His testimony was that the defendant and six other people tried to take his money or tried to get him to give his money up, and told him he was going to beat him up. It could be that the defendant is smaller than Mr. Jackson but the defendant and five other people certainly all crowded around, which is what I heard from the testimony that was on the video, that there were a whole group of people crowded around, that is intimidating and that is being a person who is participating in a group that is making a threat to another inmate. I found [Jackson's] testimony to be credible. Sergeant Goodner, when she testified, certainly corroborated Mr. Jackson's testimony about what happened. She saw it on the video and came to court and told us about that. When I look at that, I do think the State has met the burden of proving that it is more likely

7

than not, that what Mr. Jackson said is true, that the defendant did violate the rules of Duval[l].

*Tr*. at 51-52. The trial court did not abuse its discretion in revoking King's placement in community corrections after finding that he violated the DRC's condition to be respectful to other inmates when, while accompanied by about six other residents, King approached Jackson and threatened to take his money and beat him up.

King insists that a violation of the community corrections' condition to be respectful to fellow inmates cannot also support a revocation of his probation where that condition was not a condition of his probation. Specifically, King argues that the Order of Probation never advised him that a violation of a community corrections' rule would result in a violation of his probation. *Appellant's Br*. at 8. King insists that "[i]f that was a proper basis for a violation, [he] was entitled to have been informed of such at sentencing. *Id*.

At sentencing, King executed the Order of Commitment to Community Corrections, which in relevant part, required King to "comply with all rules [and] regulations" of the MCCC. *Appellant's App.* at 56. While King did not know at that time what the specific rules and regulations were for remaining in community corrections, it should have been no surprise to King that threatening to beat up and to steal money from another DRC resident would be a violation of the rules of community corrections.

Furthermore, when King was admitted to the DRC, and before he had taken action against Jackson, King knew exactly what behavior was required to remain in the DRC and what the consequences were for violating such conditions. As a prerequisite to becoming a resident of DRC, King agreed to "be respectful with . . . fellow inmates." *State's Ex*. 1.

8

Additionally, King placed his signature on the last page of the conditions under a boldfaced paragraph that specifically stated,

> *I acknowledge that any failure to abide by the rules above may result in a Notice of Violation being filed with the Court or the [DOC]; whichever is appropriate. If the Court or the [DOC] finds that I am in violation of the rules, my placement within Community Corrections may be revoked and I may be ordered to serve my sentence in the Indiana [DOC].* . . . Violations may also be reported to the Marion County Prosecutor or other law enforcement and may result in my arrest and criminal prosecution. *If I am on probation, I understand that a violation of the above rules may result in the Court revoking my probation and ordering me to serve all or part of any suspended sentence in the [DOC].*

*State's Ex*. 1 (emphasis added). King concedes that "[a] trial court may revoke probation before a probationer has entered the probationary phases of his sentence." *Appellant's Br*. at 7. The trial court did not abuse its discretion when it revoked King's probation and placement in community corrections after finding that King violated the terms of his community corrections placement.

Affirmed.

BAKER, J., and ROBB, J., concur.