**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**W. TRENT VAN HAAFTEN**
Van Haaften & Farrar, Attorneys at Law LLC
Mount Vernon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

OMOBEA KOTEA MILLER,                )
                                    )
    Appellant-Defendant,            )
                                    )
       vs.                          )          No. 65A05-1401-CR-32
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.             )

APPEAL FROM THE POSEY CIRCUIT COURT
The Honorable James M. Redwine, Judge
Cause No. 65C01-1205-FC-187

**December 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Omobea K. Miller appeals an order revoking his probation. He specifically challenges the trial court's determination that he violated his probation by committing a new criminal offense. We affirm.

**Facts and Procedural History**

In November 2012, Miller pled guilty via plea agreement to class C felony battery resulting in bodily injury to a pregnant woman, class D felony strangulation, and class A misdemeanor resisting law enforcement. The trial court entered judgment and sentenced him to an aggregate five-year sentence, with two years executed on home detention and the remainder suspended to probation.

In June 2013, Miller began his probation, which was subject to a condition that he "obey all federal, state, and local laws" and "not commit a new criminal offense." State's Ex. 1. The condition further specifies, "If you do commit a new criminal offense, your probation may be revoked." *Id.*

On the morning of August 24, 2013, Mount Vernon Police Captain Dana Allyn was dispatched to a domestic disturbance at the apartment that Miller shared with his wife Natalie Carlino. When Captain Allyn arrived, she saw Miller, Carlino, and Carlino's sister screaming at each other in front of the residence. Miller saw Captain Allyn and immediately walked away. Further inquiry revealed that Carlino was angry with her sister for having brought alcohol over to the residence when she knew that Miller had a longstanding drinking problem. No arrests were made.

About 3:00 p.m., Mount Vernon Police Officer Glenn Boyster was on his way to his security job at Miller's apartment complex and encountered Miller at a nearby convenience store. Miller told Officer Boyster that "things was crazy down [at the apartment complex]," and the officer advised Miller to stay away from there. Tr. at 6.

Shortly thereafter, Officer Boyster pulled into the complex and noticed Miller, Carlino, Carlino's sister, and several onlookers gathered on the sidewalk. It appeared to the officer that Miller and Carlino were arguing. When Miller saw the patrol car, he immediately left the scene. The agitated Carlino continued yelling until the officer threatened to arrest her for disorderly conduct, at which point she entered her vehicle and drove away.

Immediately thereafter, Captain Allyn arrived to provide assistance. She located Miller sitting outside a nearby apartment and noticed that he smelled like an alcoholic beverage. Miller admitted that he had been drinking. At this time, both Officer Boyster and Carlino drove up to the apartment. Carlino's seven-year-old daughter was with her and was noticeably upset. Carlino told the officers that during the argument, Miller had choked her. She had two visible red scrapes on her neck. Her daughter told the officers that "she didn't like it when [Miller] hit her mom." *Id*. at 24.

The officers arrested Miller for domestic battery and took him into custody. En route to the county jail, Miller repeatedly yelled, cursed, and protested his innocence. At the jail, police administered a portable breathalyzer test, which confirmed the presence of alcohol in Miller's system. Shortly thereafter, Carlino phoned police and recanted her statement that Miller had choked her.

That same day, the State charged Miller with class B misdemeanor public intoxication. A few days later, the State filed a petition to revoke Miller's probation. The trial court conducted a revocation hearing and concluded that Miller had violated the conditions of his probation by committing public intoxication. The court revoked Miller's probation and ordered that he serve the remaining three years of his sentence in the Indiana Department of Correction. Miller now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Miller maintains that the trial court abused its discretion in revoking his probation. Probation is a matter of grace left to the trial court's sound discretion, not a right to which a criminal defendant is entitled. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). The trial court determines the conditions of probation and may revoke probation if the probationer violates those conditions. *Id*. We review a trial court's probation violation determination using an abuse of discretion standard. *Jackson v. State*, 6 N.E.3d 1040, 1042 (Ind. Ct. App. 2014). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *Id*. In determining whether a trial court has abused its discretion, we neither reweigh evidence nor judge witness credibility. *Mogg v. State*, 918 N.E.2d 750, 755 (Ind. Ct. App. 2009). Instead, we consider conflicting evidence in the light most favorable to the trial court's ruling. *Id*. Because a probation revocation proceeding is civil in nature, the State need only prove the alleged probation violation by a preponderance of the evidence. *Holmes v. State*, 923 N.E.2d 479, 485 (Ind. Ct. App. 2010).

4

Here, the trial court determined that Miller had violated his probation conditions by committing a new criminal offense.

> When a probationer is accused of committing a criminal offense, an arrest alone does not warrant the revocation of probation. Likewise, the mere filing of a criminal charge against a defendant does not warrant the revocation of probation. Instead, when the State alleges that the defendant violated probation by committing a new criminal offense, the State is required to prove—by a preponderance of the evidence—that the defendant committed the offense.

*Jackson*, 6 N.E.3d at 1042 (citations and quotation marks omitted). In the context of probation revocation, the State need not establish that the defendant was actually *convicted* of the new offense. *Lightcap v. State*, 863 N.E.2d 907, 911 (Ind. Ct. App. 2007).[1]

Here, the State charged Miller with being "in a public place or a place of last resort in a state of intoxication caused by the person's use of alcohol" and "breach[ing] the peace or [being] in imminent danger of breaching the peace." Ind. Code § 7.1-5-1-3(a)(3). First, we note that Miller concedes that his altercation with Carlino occurred in a public place, that is, the parking lot outside of their apartment. Nevertheless, he challenges the trial court's determinations concerning his intoxication and his breach of the peace.

Miller first challenges the trial court's determination that he was intoxicated. Our legislature has defined "intoxicated" as "under the influence of ... alcohol ... so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86. "Impairment" may be established by evidence of "(1) the

---

[1] Miller's public intoxication charge was eventually dismissed, but we note that the dismissal has no bearing on our analysis.

consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech." *Stephens v. State*, 992 N.E.2d 935, 938 (Ind. Ct. App. 2013) (citation omitted).

Within minutes of Miller's altercation with Carlino, Captain Allyn and Officer Boyster detected the odor of alcohol on Miller's breath. Miller admitted to them that he had been consuming alcohol, and the breathalyzer test results confirmed the presence of alcohol in his system. Additionally, Miller testified that he had consumed three or four shots and characterized his condition as "a buzz." Tr. at 34-35. This evidence is sufficient to support the trial court's determination that Miller was intoxicated.

Miller also submits that the evidence is insufficient to establish by a preponderance that he breached the peace or was in imminent danger of doing so. Generally speaking, a breach of the peace is a disturbance of public tranquility and includes all violations of public peace, order, or decorum. *Lemon v. State*, 868 N.E.2d 1190, 1194 (Ind. Ct. App. 2007). In the context of the public intoxication statute, it has been held to require either actual or threatened violence. *Brown v. State*, 12 N.E.3d 952, 954 (Ind. Ct. App. 2014).

The facts most favorable to the judgment show that Miller and Carlino were engaged in an altercation disturbing enough to have attracted a crowd of observers. If anything prevented further escalation, it was Officer Boyster's arrival followed by Miller's abrupt exit. Within minutes of the fight, Carlino told police that Miller had choked her. Although she later phoned police to recant, the red marks on her neck were consistent with her original

6

accusation against Miller. Moreover, shortly after the altercation, Carlino's visibly-shaken daughter told police that she did not like it when Miller hit her mother.

Simply put, our standard of review prohibits us from choosing which version of Carlino's story to believe. Likewise, it prevents us from determining whether the child actually saw Miller strike her mother or was merely used by Carlino to buttress her original claims. Such determinations are specifically left to the trial court's discretion. The evidence most favorable to the judgment supports the trial court's determination that Miller violated his probation. Consequently, we affirm.

Affirmed.

RILEY, J., and MATHIAS, J., concur.