**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 31 2014, 10:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BRYAN P. MEEK,                          )
                                        )
    Appellant-Defendant,                )
                                        )
        vs.                          )    No. 40A01-1405-CR-213
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.                 )

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jonathan W. Webster, Judge
Cause No. 40C01-1210-FD-235

**December 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Bryan P. Meek appeals an order revoking his probation for failure to pay child support according to the terms of his probation. Finding that the State demonstrated his knowing nonpayment and that he failed to demonstrate that his nonpayment was due to an inability to pay, we affirm.

**Facts and Procedural History**

In February 2013, Meek pled guilty to class D felony nonsupport of a dependent child based on his nonpayment of approximately $11,000 in child support for his son K.M. between 2006 and 2012. At the time of his guilty plea, his child support arrearage was $14,591.47. The trial court sentenced him to two years, with eighteen months suspended to probation. As a condition of his probation, he was ordered to pay $157 per week in current and past-due child support.

Meek was released to probation in September 2013. Over the next four months, he made partial support payments totaling only $120.27 of the over $2000 due during that period. During his probation, he lived with his pregnant fiancée and her two-year old son. His fiancée was employed but later became unemployed. Also during his probation, Meek received support and/or financial assistance from his mother, grandfather, landlord, and St. Vincent de Paul. Shortly after his release from jail, Meek obtained a factory job through a local staffing company. However, he was discharged two weeks later when his criminal background check revealed a 2002 felony theft conviction. He obtained a second job but was downsized about six weeks later. For about four months, he was unemployed. He testified

2

that during those months he had submitted applications at several companies and employment agencies. On April 8, 2014, he obtained a job through a different staffing agency.

On April 15, 2014, the trial court conducted a probation revocation hearing. By that time, Meek's child support arrearage had increased to $19,864.20. Meek testified that he simply did not have the ability to pay his child support obligation. On April 23, 2014, the trial court issued an order revoking Meek's probation and committing him to the Department of Correction for the remainder of his term. The court specifically found that throughout the six years that the State had worked with him to secure payment, Meek had offered many of the same excuses for nonpayment. Concluding that Meek's failure to pay was due to a lack of willingness, not a lack of ability, the trial court characterized his nonpayment as the product of his own poor choices and lack of ambition.

Meek now appeals the probation revocation order. Additional facts will be provided as necessary.

**Discussion and Decision**

Meek maintains that the trial court abused its discretion in revoking his probation. Probation is a matter of grace left to the trial court's sound discretion, not a right to which a criminal defendant is entitled. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). The trial court determines the conditions of probation and may revoke probation if the probationer violates those conditions. *Id*. We review a trial court's probation violation determination using an abuse of discretion standard. *Jackson v. State*, 6 N.E.3d 1040, 1042 (Ind. Ct. App.

3

2014). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *Id*. In determining whether a trial court has abused its discretion, we neither reweigh evidence nor judge witness credibility. *Mogg v. State*, 918 N.E.2d 750, 755 (Ind. Ct. App. 2009). Instead, we consider conflicting evidence in the light most favorable to the trial court's ruling. *Id*. Because a probation revocation proceeding is civil in nature, the State need only prove the alleged probation violation by a preponderance of the evidence. *Holmes v. State*, 923 N.E.2d 479, 485 (Ind. Ct. App. 2010).

Upon the State's timely filing of a revocation petition, the trial court may revoke the person's probation if it finds that he has violated a condition of probation during the probationary period. Ind. Code § 35-38-2-3(a). "Probation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay." Ind. Code § 35-38-2-3(g).

> While the State has the burden to prove (a) that a probationer violated a term of probation and (b) that, if the term involved a payment requirement, the failure to pay was reckless, knowing, or intentional … it is the defendant probationer's burden … to show facts related to an inability to pay and indicating sufficient bona fide efforts to pay so as to persuade the trial court that further imprisonment should not be ordered.

*Runyon v. State*, 939 N.E.2d 613, 617 (Ind. 2010).

According to Indiana Code Section 35-41-2-2(b), "a person engages in conduct 'knowingly' if, when he or she engages in the conduct, the person is aware of a 'high probability' that he or she is doing so." *Smith v. State*, 963 N.E.2d 1110, 1113 (Ind. 2012). In other words, to obtain a probation revocation, the State must demonstrate that Meek was

4

aware of a high probability that he was not paying his weekly support obligation as ordered. "Because knowledge is a mental state of the actor, it may be proved by circumstantial evidence and inferred from the circumstances and facts of each case." *Id.*

Meek admitted at the revocation hearing that he violated a term of his probation by not paying child support as ordered. His testimony clearly demonstrates that he knew that he was not making full or any payment most weeks. Nevertheless, he maintains that he made a bona fide effort but was simply unable to meet his support obligation. He is thirty-one years old and does not have physical limitations that would prevent him from holding down a factory job. At the hearing, he testified that he had been briefly employed with three different companies during the six months since he was released from jail but that he was discharged from the first one after just two weeks due to his felony theft record, he was downsized from the second one after about six weeks, and he was currently employed at the third one (for one week). *See* Def. Ex. A (verification from Malone Staffing concerning his work assignment at Hisada America as of April 8, 2014). He testified that he had submitted applications to several companies and continued to check with employment agencies for updates. However, he did not produce any documentation to verify these efforts.

Meek admitted the following with respect to jobs, education, and finances:

Q      Do you have proof of all of this seeking these jobs, you didn't bring proof with you?

A      No, I didn't.

Q      So you live off of what your fiancé [sic] makes?

A      Somewhat, yeah.

5

…

Q      Were you bringing any other money into the household?

A      No I was not.

Q      Do you have a high school diploma?

A      No.

Q      And have you worked toward getting a GED?

A      No.

Q      Why not?

A      I don't know really.  I don't have an answer for that.

Q      Do you think that that would help in you obtaining employment?

A      I think what would help me obtaining employment if North Vernon wasn't a judgmental town and I had means and access, which I do now, for employment out of town for better employment, maybe better pay and that way I can afford to pay the $157 plus the $550 in rent plus $400 electric and plus gas it would take to get me back and forth to my job.

Q      I mean you seem like a smart enough guy.  I would think you would be able to do a GED pretty easy.

A      Yeah, I could.

Q      But you just haven't?

A      No, I haven't.

Tr. at 13-14.

With respect to his current job and household financial situation, Meek testified as follows:

Q        How are you getting [to your new job]?

A        Through my fiancé [sic].  She's got a car.

Q        And I think you testified earlier that she was working.  Is she employed now?

A        No.

Q        Is she looking for other work?

A        No.

Q        And so, the apartment there on Lincoln Avenue, who all lives there, is it the two of you or?

A        Yeah, the two of us and a two year old.

Q        And so your income right now is the only income in that household?

A        Yes.

Q        And your license has been suspended by the State[?]

A        Yes it has.

Q        As part of the child support case?

A        Yes.

….

Q        So you said … you owe about two thousand dollars [for past due living expenses]?

A        Yeah.

Q        That's for what, for rent for utilities?

A        For rent, back rent.

Q        Back rent?

7

A       Yeah.

Q       So you're not even being able to meet in the last few months,

A       No.

Q       … living obligations (inaudible)

A       We had, [the landlord] delivered a letter under the door that says we're supposed to pay $225 a week.[1]  I don't know if I've got, or we will be evicted for that if we can't meet the $225 a week.

*Id*. at 17, 21.

Finally, the following testimony illustrates that even when he had money, Meek chose to use it in ways other than meeting his court-ordered child support obligation:

I mean, I'm not disputing the fact that I violated my probation.  I admit to it.  I did do it.  But, in a defense, I had to make a decision to either be completely homeless on the street and risk going back to jail, which I reached that, I understand that, but also I have a fiancé [sic] that has a child on the way and a two year old child that I had to look out for and I understand that I have another son named [K.M.] to look out for completely, I understand that.  But my reasoning for that was, he, I thought he had a stable place.  I know it's my responsibility to step up and take responsibility and pay for it, pay the child support, I willingly admit that, but on the other hand, I was trying to look out for the safety of my family now because [K.M.] has a roof over his head, he has food and all that.  I understand that.  I mean, I admit to what I did and I'm willing to take the consequences to it.  I admit that was wrong and I violated my probation.

*Id*. at 10-11.

As this testimony demonstrates, Meek admitted that he knowingly violated his probation by failing to pay child support as ordered.  Knowing that his probation could be revoked for nonpayment, he made only spotty payments totaling about six percent of his

[1]  Notably, Meek did not produce the letter to support his claim of dire financial straits.

8

weekly obligation. Although he struggled to maintain employment during his probation, he made a deliberate choice to use the meager income that he brought in to support his pregnant fiancée and her son (for whom he owed no legal obligation) instead of meeting his legal obligation to his biological son. While Meek's living and employment circumstances are regrettable, his financial challenges are mostly due to his own poor choices. Having lost his first job due to his criminal background and his second job due to downsizing, he was unemployed for four months and took a new job just one week before his probation revocation hearing. At the hearing, he deflected blame to what he characterized as a city full of judgmental people and presented no evidence other than his own uncorroborated testimony to account for his four months of unemployment. In other words, he came to court with no documentation to show that he made a bona fide effort to find employment so that he could meet his child support obligation between mid-December 2013 and April 2014, despite being able-bodied and admittedly bright enough to have obtained a GED.

In sum, the State met its burden of demonstrating Meek's knowing nonpayment of child support, and Meek failed to present evidence demonstrating that he made a bona fide effort but was simply unable to pay. Based on the foregoing, we conclude that the trial court acted within its discretion in revoking Meek's probation. *See Smith*, 963 N.E.2d at 1113-14 (affirming probation revocation and holding that defendant failed to meet his burden of showing inability to pay and sufficient bona fide efforts where defendant made only sporadic partial payments even when he was employed). Accordingly, we affirm.

9

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.