## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 26 2017, 5:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander L. Hoover
Law Office of Christopher G. Walter, PC
Nappanee, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jessie L. Styles,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 26, 2017

Court of Appeals Case No.
20A03-1612-CR-2758

Appeal from the Elkhart Superior Court

The Honorable Gretchen S. Lund, Judge

Trial Court Cause No.
20D04-1510-F6-1005 & 20D04-1511-F6-1039

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Jessie Styles (Styles), appeals the trial court's revocation of his placement in a community corrections program.

We affirm.

# ISSUE

Styles presents one issue on appeal, which we restate as follows: Whether the trial court abused its discretion in revoking Styles' placement in a community corrections program and ordering that he serves the remainder of his sentence in the Indiana Department of Correction (DOC).

# FACTS AND PROCEDURAL HISTORY

On October 23, 2015, in cause number 20D04-1510-F6-1005 (F6-1005), the State charged Styles with intimidation, a Level 6 felony; theft, a Class A misdemeanor; and theft, a Level 6 felony based on a prior theft conviction. On November 3, 2015, in cause number 20D04-1511-F6-1039 (F6-1039), Styles was charged with theft, a Class A misdemeanor, and a Level 6 felony theft based on a prior theft conviction. On February 10, 2016, Styles agreed to plead guilty to the charges in F6-1005 and F6-1039. On March 9, 2016, the trial court accepted Styles' plea and sentenced him in accordance with the plea agreement. Specifically, the trial court sentenced Styles to consecutive sentences of 730 days for the intimidation and theft charges in F6-1005; and 730 days for the theft offense in F6-1039. Styles' aggregate sentence of 1460 days was to be executed in the Elkhart County community corrections work release program.

On July 2, 2016, Styles, who is epileptic, had a seizure at the community corrections facility. Another inmate notified community corrections officer Nicholas Kruger (Officer Kruger). First, Officer Kruger put Styles in the recovery position and then propped his head with a blanket. According to Officer Kruger, while Styles was seizing, he became violent to him and the other officers who were assisting him. When Styles eventually "came out of it," he told the officers to get away from him and leave him alone. (Transcript p. 18). Shortly thereafter, Styles was transported to Goshen General Hospital in the company of Officer Kruger and another officer. While Styles was waiting to be attended to by the hospital staff, Officer Kruger and the other officer were talking. After Officer Kruger smiled at the other officer based on something that the two officers were talking about, Styles interjected, "You won't be smiling when I am free." (State's Exh. 1). Officer Kruger construed Styles' statement as a threat to his safety.

On July 8, 2016, the Elkhart County community corrections filed a violation notice, in which it asserted that Styles' statement was a direct threat to Officer Kruger and it earned Styles "three major violations." (Appellant's App. p. 87). The notice further alleged that during the past one and a half months while Styles was enrolled in the work release program, Styles was rude to the staff on at least two occasions; had used profane language; had engaged in disruptive conduct; was found twice in possession of contraband; and had failed to be at the proper place at an assigned time. Based on these violations, Elkhart County

community corrections requested Styles to be removed from the work release program. On the same day, the trial court ordered Styles' arrest.

[7] On October 3, 2016, the trial court conducted a revocation hearing. Officer Kruger testified that he understood Styles' statement, "you won't be smiling when I am free," to be a threat to his wellbeing. (State's Exh. 1). Styles admitted that he made the statement but indicated that it was not a threat; rather, it was more of a disciplinary threat against Officer Kruger. Specifically, Styles alleged that on the day that he suffered an epileptic fit and was regaining his consciousness, Officer Kruger "was on top of [him] with his entire body weight" and was "choking" him "from behind." (Tr. p. 22). Styles further stated that when he tried to stand up, Officer Kruger "forced [him] back down," and he was handcuffed. (Tr. p. 22). Styles testified that he intended to file a disciplinary report against Officer Kruger, however, because he was in a holding cell shortly after he made the threatening statement, he was unable to obtain the necessary paperwork to lodge his complaint. At the close of the evidentiary hearing, the trial court found that Styles' statement to Officer Kruger was a threat, and it revoked Styles' placement at the Elkhart County community corrections. On November 3, 2016, the trial court issued an order revoking Styles' placement and ordered that the balance of his sentence, 730 days, be served in the DOC.

[8] Styles now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[9] We treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. *Holmes v. State*, 923 N.E.2d 479 (Ind. Ct. App. 2010). Probation and community corrections programs serve as alternatives to commitment to the Department of Correction, and placements in such programs are made at the sole discretion of the trial court. *Id.* A defendant is not entitled to serve a sentence in either probation or a community corrections program; rather placement is a matter of grace and a conditional liberty that is a favor, not a right. *Id.*

[10] Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. *Id.* A probation hearing is civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence. *Id.* We consider the evidence most favorable to the judgment of the trial court and do not reweigh that evidence or judge the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation or community corrections, we affirm its decision to revoke. *Id.* Even if a trial court has made erroneous findings with respect to some alleged violations, proof of any one violation of community corrections rules or probation is sufficient on appeal to affirm revocation. *Figures v. State*, 920 N.E.2d 267, 273 (Ind. Ct. App. 2010).

Styles first claims that the statement he made to Officer Kruger could not constitute a violation of the terms of his work release. Also, Styles claims that the trial court abused its discretion in revoking his placement and ordering the remainder of his sentence be served in the DOC. We will address each issue in turn.

On appeal, Styles admits that he made the statement, "[Y]ou won't be smiling when I am free," to Officer Kruger while at Goshen General Hospital. (State's Exh. 1). Styles, however, contends that it is "unclear whether the off-hand comment . . . is truly enough to violate" the terms of his work release. (Appellant's Br. p. 10). During direct examination, Officer Kruger indicated that while at the hospital, he turned on his body camera after Styles stated "You won't be smiling once I'm out." (Tr. p. 11). After the video recording from Officer's Kruger's body camera was published to the trial court, Officer Kruger stated, "I mean somebody makes a statement like that you, you're going to take it as [a] threat . . . I don't know what he is capable of doing when he's out." (Tr. p. 16). On cross-examination, Officer Kruger was queried on the events that tracked Styles' seizure, and the following colloquy took place:

> Q. What were your actions when he had a seizure?
>
> A: I was actually notified, by another offender that had told us that he was having a seizure. I walked in there. There was another offender that had picked him up from slamming his head next to a bunk and was actually holding him. I thanked him for what he did and took over the situation and then put him into the recovery position.

Q  And what did you -- what did you do physically at that point?

A.  I laid him actually on his side and then I had one of the guys grab his blanket and throw it down to actually prop his head up while he was seizing cause when I was still in there he was still seizing.

Q.  Okay.  And did you physically restrain him in any way?

A.  Yeah, he ended up becoming violent with us and started resisting us.  The guys in the ward were talking to him, telling him hey, calm down, calm down, calm down; they're here to help, they're here to help.  He actually came out of it; told me to leave him alone and get away from him so he was actually able to talk and he was communicating and struggling with us.

Q.  Okay.

A.  There was, I think five of us involved.

***

Q.  All right. Who was there with you?

A.  [the other officer] was there with me as well.

Q.  Okay.  And is [the other officer] the only one that was there with prior to this?

A.  Yes.

Q.  Okay. And where were you two?

A. He was actually sitting right next to me. Me and him were having a conversation about something . . ..

Q. So you guys -were you guys having -- so you guys were having your own conversation?

A. Yes.

Q. Not involving [] Styles?

A. That is correct.

Q. And were you joking around?

A. He said something to me and that's when I smiled at [the other officer].

Q. Okay. So you were smiling; were you guys laughing?

A. I don't think we were laughing, no.

Q. Okay. All right, and that's when he said you won't be smiling when I'm free; correct?

A. Yes.

(Tr. pp.18-20). When Styles was questioned as to what led him to make the statement to Officer Kruger, the following exchange occurred:

A. [Officer] Kruger was sitting, making jokes, and pointing at me and I was trying to get his attention as far as being released from the handcuffs at least to be having, at least to have needles

placed into me, and the other things they were trying to do. He continued making jokes about it and was laughing about it and that's about what took place.

Q. Okay. And you don't deny saying the words you won't be smiling when I'm free; correct?

A. Yes although I had said them, I apologized. At first, they were taken in threatening manner although he had been unable to give those jokes to his boss when I reported him.

(Tr. pp. 22-23).

[13]	As noted, this court neither reweighs the evidence nor judges the credibility of the witnesses. *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995). Instead, we consider only the evidence that supports revocation, and we draw all reasonable inferences from that evidence. *Id*. Notwithstanding Styles' claim that it is unclear whether his statement to Officer Kruger was a threat, the State presented evidence that Officer Kruger believed it was a threat, and the trial court in this case was in the best position to weigh the evidence. Because the trial court construed Styles' statement to Officer Kruger as a threat to a staff member, it properly found that Styles had violated the terms of work release. As such, we cannot say that the trial court abused its discretion in revoking Styles' work release.

[14]	Lastly, Styles contends that the trial court abused its discretion in ordering him to serve the balance of his sentence in the DOC. We observe that Ind. Code §

35-38-2.6- 5 governs placement in community corrections, and specifically states:

> If a person who is placed under this chapter violates the terms of the placement, the court may, after a hearing, do any of the following:
>
> (1) Change the terms of the placement.
>
> (2) Continue the placement.
>
> (3) Revoke the placement and commit the person to the department of correction for the remainder of the person's sentence.

[15] At Styles' revocation hearing, Lynn Bauman, the assistant director of the Elkhart County community corrections work release program, testified that Styles was ineligible to participate in the program because he had threatened a staff member. Moreover, the notice of violation filed by the Elkhart County community corrections, cited other violations committed by Styles. Specifically, Styles had been rude to the community corrections staff on at least two occasions; had used profane language; had engaged in disruptive conduct; was found twice in possession of contraband; and had failed to be at the proper place at an assigned time. Based on Styles' threat to Officer Kruger, and together with the other violations, we are not persuaded that the trial court abused its discretion in ordering Styles to serve the remaining portion of his sentence in the DOC.

# CONCLUSION

Based on the above, we hold that the trial court did not abuse its discretion in revoking Styles' placement in community corrections, and ordering him to serve the remainder of his sentence in the DOC.

Affirmed.

Najam, J. and Bradford, J. concur